## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ASHLEY REEDY, JOSHUA COOK, MELODY SCHOON, JASMINE SMITH SHADARI BUSH and SEDENA MCCLAIN, *on behalf of themselves & all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> EVERLYWELL, INC. and BABY SOMEDAY, INC. D/B/A NATALIST, <br><br> Defendants. | Case No. 1:24-cv-02713 <br><br> Hon. Andrea R. Wood |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

DAVID S. ALMEIDA
MATTHEW J. LANGLEY
BRITANY A. KABAKOV
**ALMEIDA LAW GROUP LLC**
849 W. WEBSTER AVENUE
CHICAGO, ILLINOIS 60614
(708) 529-5418
DAVID@ALMEIDALAWGROUP.COM
MATT@ALMEIDALAWGROUP.COM
BRITANY@ALMEIDALAWGROUP.COM

MASON A. BARNEY
TYLER BEAN
**SIRI & GLIMSTAD LLP**
745 FIFTH AVENUE, SUITE 500
NEW YORK, NEW YORK 10151
(212) 532-1091
TBEAN@SIRILLP.COM

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

RELEVANT FACTUAL & PROCEDURAL BACKGROUND ...................................... 2

SUMMARY OF THE PROPOSED SETTLEMENT TERMS ....................................... 3

I.    The Settlement Class & Subclasses. ...................................................... 4

II.    The Settlement Benefits. ......................................................................... 4

III.    Notice & Settlement Administration As Well as Any Court-Approved Awards, Fees & Expenses Will be Paid from the Settlement Funds. .................................................. 5

IV.    Settlement Administration & Notice to the Settlement Class. ....................................... 6

V.    The Claims Procedure, Objections & Opt-Outs. .................................... 7

VI.    The Release. .......................................................................................... 9

LEGAL STANDARD ................................................................................................. 9

DISCUSSION ........................................................................................................... 10

I.    The Court will likely be able to certify the Settlement Class for purposes of entering judgment on the Settlement. ................................................................................. 10

    A.    The Settlement Class Satisfies the Requirements of Rule 23(a)................................... 11

        1.    The Settlement Class Members are so numerous that joinder of all members is impracticable. ...................................................................................... 11

        2.    There are questions of law & fact common to the Settlement Class. ...................... 11

        3.    Class Representatives' claims are typical of Class Members' claims...................... 12

        4.    Class Representatives will adequately protect the interests of the Settlement Class.13

    B.    The Settlement Class meets the Requirements of Rule 23(b)...................................... 14

        1.    Common questions of law & fact predominate over any questions affecting only individual members of the Settlement Class.......................................................... 14

        2.    The Settlement Class is superior to other methods for the fair & efficient adjudication of the controversy........................................................................ 15

II.    The Settlement Meets the Requirements for Preliminary Approval Under Rule 23(e)(2)........................................................................................................ 16

    A.    The Class Representatives & Proposed Class Counsel Have Adequately Represented the Class........................................................................................... 16

    B.    The Settlement was Negotiated at Arm's Length. ...................................................... 18

    C.    The Settlement has no Obvious Deficiencies & does not Grant Preferential Treatment to any Class Members. ................................................................................. 18

        1.    The costs, risks and delay of trial & appeal are considerable................................. 19

2.     The proposed method of distributing relief & processing claims is objective, efficient & fair.................................................................................................. 20

3.     The attorneys' fees, costs & expenses as well as the Service Awards that Plaintiffs will request are reasonable and appropriate....................................................... 20

4.     Disclosure of side agreements. .................................................................. 22

D.    The Settlement Treats Class Members Equitably Relative to Each Other.................... 22

III.    The Court Should Approve the Proposed Notice Program. ......................................... 23

IV.    The Court should appoint the Settlement Administrator............................................... 24

V.    The Court should schedule a final approval hearing. ..................................................... 24

CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Bartlett v. City of Chicago*,
   2017 WL 11885188 (N.D. Ill. Jan. 31, 2017)........................................................ 21

*Butler v. Am. Cable & Tel., LLC*,
   2011 WL 2708399 (N.D. Ill. July 12, 2011)......................................................... 17

*Chandler v. S.W. Jeep–Eagle, Inc.*,
   162 F.R.D. 302 (N.D. Ill. 1995) ................................................................... 11, 14

*Edmondson v. Simon*,
   86 F.R.D. 375 (N.D. Ill. 1980) ......................................................................... 12

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ........................................................................... 14

*Frasco v. Flo Health, Inc.*,
   2024 WL 4280933 (N.D. Cal. Sept. 23, 2024)................................................... 20

*Gaspar v. Linvatec Corp.*,
   167 F.R.D. 51 (N.D. Ill. 1996) ......................................................................... 12

*Gomez v. St. Vincent Health, Inc.*,
   649 F.3d 583 (7th Cir. 2011) ........................................................................... 13

*Hinman v. M & M Rental Ctr.*,
   545 F. Supp. 2d 802 (N.D. Ill. 2008)................................................................. 15

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ..................................................................... 15

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ................................................................... 16, 24

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015)................................................................... 19

*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*,
   2017 WL 1196990 (N.D. Ill. Mar. 31, 2017)....................................................... 11

*In re Tiktok, Inc. Consumer Priv. Litig.*,
   617 F. Supp. 3d 904 (N.D. Ill. 2022)................................................................. 22

*In re TJX Cos. Retail Sec. Breach Litig.*,
   246 F.R.D. 389 (D. Mass. 2007) ..................................................................... 20

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ................................................................. 9

*Leung v. XPO Logistics, Inc.*,
    326 F.R.D. 185 (N.D. Ill. 2018) ..................................................... 21, 22

*Mace v. Van Ru Cred. Corp.*,
    109 F.3d 338 (7th Cir. 1997) ............................................................... 15

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ......................................................... 18

*McCue v. MB Fin., Inc.*,
    2015 WL 1020348 (N.D. Ill. Mar. 6, 2015) ........................................ 9

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ............................................................................ 24

*Muro v. Target Corp.*,
    580 F.3d 485 (7th Cir. 2009) ............................................................... 13

*Orr v. Shicker*,
    953 F.3d 490 (7th Cir. 2020) ............................................................... 13

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................ 15

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ....................................................... 12, 14

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................. 24

*Swanson v. Am. Consumer Indus., Inc.*,
    415 F.2d 1326 (7th Cir. 1969) ............................................................. 11

*T.K. v. Bytedance Tech. Co.*,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .............................. 16, 17, 21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................. 11, 12, 13

*Woestman v. Signode Indus. Grp., LLC*,
    594 F. Supp. 3d 993 (N.D. Ill. 2022) ................................................. 11

**Statutes**

720 Ill. Comp. Stat. 5/14 ....................................................................... 3

815 Ill. Comp. Stat. 505/1 ............................................................................................... 3

Md. Code Ann., Cts. & Jud. Proc. § 10-402 ................................................................. 3

NRS Ch. 598 .................................................................................................................... 3

**Rules**

Fed.R.Civ.P. 23 ....................................................................................................... *passim*

Plaintiffs Ashley Reedy, Joshua Cook, Melody Schoon, Jasmine Smith, Shadari Bush and Sedena McClain (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through undersigned counsel, submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement. Defendants Everlywell, Inc. ("Everlywell") and Baby Someday, Inc. d/b/a Natalist ("Natalist") (together, "Defendants" and collectively with Plaintiffs, the "Parties") do not oppose the relief sought by this motion. Plaintiffs respectfully request that this Honorable Court grant preliminary approval of the Parties' proposed class action settlement under Federal Rule of Civil Procedure 23.[1]

## **INTRODUCTION**

Plaintiffs commenced this putative class action lawsuit by filing a complaint asserting various statutory and common law claims based on their allegations that Defendants installed, configured and used certain tracking tools on their websites to collect and to divulge personal information. After Defendants filed an appearance, the parties began discussing the contours of a possible class-wide resolution and exchanged informal discovery to aid in that endeavor. Thereafter, the Parties exchanged additional information, prepared mediation statements and participated in a full-day mediation presided over by Mr. Bruce A. Friedman, Esq., of JAMS.

As a result of those and other related efforts, the Parties were able to reach an agreement in principle to resolve this case on a class-wide basis. If approved, the Settlement will provide significant monetary benefits as Defendants will establish a $5,000,000 non-reversionary common fund which—after deducting for all court-approved costs and expenses—will be distributed to the

---

[1] A proposed Preliminary Approval Order is attached as Exhibit D to the Settlement Agreement, which is attached to the Joint Declaration of Counsel (the "Joint Decl.") (**Exhibit A** hereto).

Settlement Class Members on a *pro rata* basis.[2] Throughout the lifespan of the case, the mediation, and to this day, Defendants have disputed and continue to dispute the merits of Plaintiffs' claims. Foregoing years of potentially protracted litigation and instead receiving monetary renumeration in the near term is an excellent result for Settlement Class Members. The proposed Settlement is within the range of reasonableness and warrants the provision of class notice so that Settlement Class Members may be apprised as to the terms and weigh in with their responses, which undersigned counsel expect to be overwhelmingly positive.

Given the strength and overall fairness of this Settlement, Plaintiffs respectfully request that this Court: (i) preliminarily approve the Settlement as fair, adequate, reasonable and within the reasonable range of possible final approval; (ii) appoint Plaintiffs Ashley Reedy, Joshua Cook, Melody Schoon, Jasmine Smith, Shadari Bush and Sedena McClain as Class Representatives; (iii) appoint Almeida Law Group LLC and Siri & Glimstad LLP as Class Counsel; (iv) provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (v) approve the Parties' proposed notice program and confirm that it is appropriate notice that satisfies due process and Rule 23; (vi) schedule a final approval hearing and (vii) set deadlines for members of the Settlement Class to submit claims and to object to or exclude themselves from the Settlement.

## RELEVANT FACTUAL & PROCEDURAL BACKGROUND

On April 4, 2024, Plaintiffs commenced this putative class action lawsuit, alleging that their personal data was collected and divulged to Meta Platforms, Inc. d/b/a Facebook and Google LLC through Defendant Everlywell's use of Meta Pixel and Google Analytics software on its

---

[2] Unless otherwise indicated, capitalized terms refer to and have the same meaning as those set forth in the Settlement Agreement, which is attached as Exhibit 1 to the Joint Declaration.

Website. *See* ECF No. 1 (the "Complaint"). Once counsel for Everlywell appeared, the Parties engaged in extensive communications and agreed to informal exchange of information so that each side could understand and evaluate the nature and extent of Defendant Everlywell's use of Tracking Tools on its Website as well as investigate the facts, evaluate the asserted claims and potential claims and defenses and assess the scope of damages (if Plaintiffs were ultimately able to prevail in the Litigation). *See* Joint Decl. ¶¶ 12-14. Through these discussions, the Parties agreed that Baby Someday Inc. d/b/a Natalist, a subsidiary entity of Everlywell, should be included in the mediation given Natalist's similar use of Tracking Tools.

On August 7, 2024, the Parties engaged in a full-day mediation before Mr. Bruce A. Friedman, Esq., a private mediator with JAMS. *See id*. The mediation resulted in a class-wide settlement in principle and thereafter the Parties worked extensively to negotiate and to execute a formal settlement agreement, which is submitted herewith. *See generally id.* ¶¶ 18-19.

Thereafter, on September 6, 2024, Plaintiffs filed an Amended Class Action Complaint adding Natalist as an additional defendant and asserting six causes of action against both Defendants: (i) violation of the federal Electronic Communications Privacy Act for an Unauthorized Interception, Use and Disclosure, (ii) negligence, (iii) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*; (iv) violations of the Illinois Eavesdropping Statute, 720 Ill. Comp. Stat. 5/14, *et seq.*; (v) violations of the Nevada Deceptive Trade Practices Act, NRS Ch. 598 and (vi) violations of the Maryland Wiretap Act, Md. Code Ann., Cts. & Jud. Proc. § 10-402. *See generally* ECF No. 21.

## SUMMARY OF THE PROPOSED SETTLEMENT TERMS

As detailed below, this proposed Settlement provides a straightforward claims process by which Settlement Class Members may obtain an award from the Settlement or exclude themselves

therefrom or object. In exchange for monetary and non-monetary benefits, Settlement Class Members will release any and all claims against Defendants arising from or related in any way to the claims that have been brought or could have been brought in the Litigation.

## I.     THE SETTLEMENT CLASS & SUBCLASSES.

The Settlement provides for certification of a Settlement Class defined as "all individuals who purchased a product or service from www.everlywell.com or www.natalist.com anytime in the five years preceding the filing of the Complaint in the Litigation and up through and including the date that the Court grants preliminary approval to Settlement Agreement." Settlement Agreement ("SA") ¶ 12.rr. The Settlement Class consists of approximately two-million individuals. *Id*; Joint Decl. ¶ 8. A Settlement Class Member is any Person who falls within the definition of the Settlement Class. SA ¶ 12.uu.

The Settlement Class is divided into two subclasses. The first, "Sensitive Test Subclass," is defined as the "approximately 660,000 natural persons who used Defendants' Websites to purchase test kits and other products along the lines of the allegedly sensitive tests specifically alleged in the Complaint to have been purchased by the named Plaintiffs in this litigation, such as, but not limited to, tests for sexually transmitted infections." *Id*. ¶ 12.nn. And the second, titled "Non-Sensitive Test Subclass," is defined as "the approximately 1,340,000 natural persons who used Defendants' Websites to purchase test kits and other products not included within the 'sensitive' tests described in Paragraph 12 [of the Settlement Agreement]." *Id*. ¶ 12.t.

## II.    THE SETTLEMENT BENEFITS.

The Settlement provides Settlement Class Members with timely and tangible benefits targeted at remediating the specific harms they allegedly suffered using Defendants' Websites as

detailed in the Amended Complaint. The benefits of the Settlement are available to all Settlement Class Members through the $5,000,000 Settlement Fund to be funded by Defendants. SA ¶ 12.tt.

The Settlement Fund will be divided into the Sensitive and Non-Sensitive Test Settlement Fund. The Sensitive Test Settlement fund will be funded in the amount of $2,640,000.00, and will be used to pay for (i) 52.8% of the Notice and Settlement Administration Costs incurred in the administration of the Sensitive Test and Non-Sensitive Test Settlement Fund, (ii) 52.8% of any attorneys' fees and costs and expenses and Service Awards approved by the Court and (iii) payment to Sensitive Test Subclass Members who submit valid Claim Forms. *See id.* ¶ 12.mm. The Non-Sensitive Test Settlement Fund will be funded in the amount of $2,360,000.00, and will be used to pay for (i) 47.2% of the Notice and Settlement Administration Costs incurred in the administration of the Sensitive Test Settlement Fund and Non-Sensitive Test Settlement Fund, (ii) 47.2% of any attorneys' fees and costs and expenses and Service Awards approved by the Court and (iii) payment to Non-Sensitive Test Subclass Members who submit valid Claim Forms. *See id.* ¶ 12.s.

## III. NOTICE & SETTLEMENT ADMINISTRATION AS WELL AS ANY COURT-APPROVED AWARDS, FEES & EXPENSES WILL BE PAID FROM THE SETTLEMENT FUNDS.

As part of the Settlement, Defendants agree to pay the costs and expenses associated with and incurred through Claims Administration including, but not limited to, the costs of notice to the Settlement Class with such costs to come out, on a proportionate basis, of each respective Sensitive Test or Non-Sensitive Test Settlement Fund. *See* SA ¶ 12.tt. The Settlement Agreement also provides that Class Counsel may request an award of reasonable litigation fees and attorneys' fees not to exceed one-third of the Net Settlement Fund, defined as "the Settlement Fund after deduction for (i) the Notice and Settlement Administration Costs incurred in the administration of both the Sensitive Test Settlement Fund and the Non-Sensitive Test Settlement Fund (ii) litigation expenses; and (iii) Service Awards as approved and awarded by the Court." *See id.* § 2.12(r). In addition, the

5

Settlement Agreement permits Class Counsel to request approval of a service award of $2,500 for each Plaintiff, which recognizes their efforts and commitment on behalf of the Settlement Class. *Id.* ¶ 69. Class Counsel will move separately for approval of an award of attorneys' fees, reasonable litigation expenses, and approval of service awards no later than fourteen days prior to the Objection Deadline. *Id.* ¶ 70. Counsel for the Parties did not discuss or otherwise agree upon the amount of attorneys' fees and expenses or Plaintiffs' proposed service awards to be sought until after they agreed on all material terms of relief to the Settlement Class. *See* Joint Decl. ¶ 44.

IV.     **SETTLEMENT ADMINISTRATION & NOTICE TO THE SETTLEMENT CLASS.**

Following a competitive bidding process, the Parties have selected, subject to Court approval, Kroll Settlement Administration ("Kroll") as Settlement Administrator to administer the Settlement. *See* SA ¶ 12.pp. Kroll is extremely experienced in administering data privacy and security class action settlements. *See* Declaration of Patrick Passarella of Kroll Settlement Administration LLC in Connection with Preliminary Approval of Settlement (the "Kroll Decl.") ¶ 2 (**Exhibit B** hereto).

Defendants represent that they possess contact information for the Settlement Class Members thus the Settlement requires that Defendants provide the Settlement Administrator with the names as well as last mailing and/or email addresses known to Defendants for each Settlement Class Member within thirty days of the Court's entry of an order granting preliminary approval of the Settlement. SA ¶ 46. The Settlement Administrator shall then send the Short-Form Notice to all Settlement Class Members within forty-five days of entry of the Preliminary Approval Order. *Id.* ¶ 47. Kroll will track and monitor emails that are rejected or "bounced back" as undeliverable. Kroll Decl. ¶ 7. With regards to any undeliverable email addresses, Kroll will use an advanced email address search process to find an alternative email address to re-send the Email Notice. *Id.*

¶ 9. If no updated email address is found, Kroll will send a Postcard Notice by first-class mail to the physical address for that record if available. *Id.* In addition, the Kroll shall create a dedicated Settlement Website which shall contain important documents regarding the case including, but not limited to, the operative complaint, a more detailed Long-Form Notice, the Settlement Agreement and a Claim Form so that Claims may be submitted online. Agreement ¶¶ 50-51; Kroll Decl. ¶ 15. A toll-free number with interactive voice response, FAQs and an option to speak to a live operator will also be available to address Settlement Class Members' inquiries. Kroll Decl. ¶ 16.

## V.    THE CLAIMS PROCEDURE, OBJECTIONS & OPT-OUTS.

Settlement Class Members may submit Claim Forms to the Settlement Administrator via the Settlement Website or by mail. SA ¶ 35. The Email Notice sent to Class Members will include a link to the Settlement Website. *See* SA, Ex. C. The Claim Form will be simple to complete and require claimants to provide only their full names, mailing address, telephone number, the Class Member ID provided with their Notice, and affirmation in the form of two checkboxes that the claimant is a Class Member and elects to receive the pro rata payment approved by the Court. *See* SA, Ex. A. The Claim Form also specifies that by signing, the claimant swears and affirms that the information provided is true and correct to the best of their recollection. *Id.*

Settlement Class Members must submit their Claim by the Claim Deadline established by the Court in the Preliminary Approval Order. SA ¶ 12.d. The Settlement Administrator will review and evaluate all Claims and shall determine their validity, timeliness and completeness. *Id.* ¶ 36. If, in the determination of the Settlement Administrator, the Settlement Class Member submits a timely but incomplete Claim Form, the Settlement Administrator shall give the Settlement Class Member notice of the deficiencies, and the Settlement Class Member shall have twenty Days from the date of the written notice to cure the deficiencies. *Id.* ¶ 37. The Settlement Administrator will

provide notice of deficiencies concurrently to Defendants' Counsel and Class Counsel. *Id.* If the defect is not cured within the 20-Day period, then the Claim will be deemed invalid. All Settlement Class Members who submit a valid and timely Claim Form, including a Claim Form deemed defective but timely cured, shall be considered "Claimants." *Id.*

Settlement Class Members may exclude themselves from participating in the Settlement by postmarking a written notice of opt-out to the Settlement Administrator no later than the Opt-Out Date, which is sixty days after the Notice Date. *Id.* ¶¶ 12.z, 63. This written notice must clearly manifest a Person's intent to be excluded from the Settlement Class. *Id.* Any Person who submits a valid and timely notice of their intent to be excluded from the Settlement Class shall not receive any benefits nor be bound by the Settlement's terms and conditions. *Id.* ¶ 67.

Settlement Class Members may object to the Settlement by submitting their objection, in writing and by mail to the Court, Class Counsel and Defendant's Counsel no later than sixty days after the Notice Date. SA ¶ 59. Each Objection must (i) include the case name and number of the Litigation; (ii) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (iii) contain the Settlement Class Member's signature; (iv) if the objecting Settlement Class Member is represented by, or received assistance from an attorney, must include the attorney's contact information; (v) contain a statement indicating the basis for the objecting Settlement Class Member's belief that he or she is a member of the Settlement Class; (vi) state whether the objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class; (vii) include the basis for the Objection; (viii) include information identifying any case in which the objecting Settlement Class Member or representative filed an objection in the past three (3) years; and (ix) state whether the objecting Settlement Class Member or their counsel intends to appear at the Final Approval Hearing. *Id.* ¶

57. If a Settlement Class Member fails to timely file and serve an Objection pursuant to these requirements, the Objection will not be valid. *Id.* ¶ 62.

## VI.   THE RELEASE.

To receive Settlement Benefits, Plaintiffs and Settlement Class Members agree to release Defendants and affiliated entities from all past, present and future claims and causes of action asserted or that could have been asserted, or that arise out of or are connected to the Litigation. SA ¶¶ 87-88. Subject to Court approval, as of the Effective Date, Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement shall be bound by the Settlement Agreement and Release, and the Released Claims shall be dismissed with prejudice and released. *Id.* ¶ 90. This includes the release of Unknown Claims that could have been raised. *Id.* ¶ 91.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed class action settlement. Specifically, Rule 23(e)(1)(B) directs a court to grant preliminary settlement approval and direct notice to the proposed class if the court "will likely be able to" grant final approval under Rule 23(e)(2) and "will likely be able to" certify a settlement class for purposes of entering judgment. FED.R.CIV.P. 23(e)(1)(B). Courts "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Moreover, courts specifically "encourage parties to settle class actions early, without expending unnecessary resources" as "early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *McCue v. MB Fin., Inc.*, 2015 WL 1020348, at *2 (N.D. Ill. Mar. 6, 2015) (quotation omitted).

Rule 23(e)(2) lists the factors federal courts consider in determining whether proposed class action settlement is "fair, reasonable, and adequate." Those factors are whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

    (i)      the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)     any agreement required to be identified under Rule 23(e)(3) and

(D)     the proposal treats class members equitably relative to each other.

FED.R.CIV.P. 23(e)(2). As the Advisory Committee's note explains, subsections (A) and (B) focus on the "procedural" fairness of a settlement and (C) and (D) focus on the "substantive" fairness of the settlement. FED.R.CIV.P. 23(e)(2) advisory committee's note to 2018 amendments. Here, the Court should grant preliminary approval because it "will likely be able to" grant final approval to the Settlement as "fair, reasonable, and adequate" and certify the Settlement Class for purposes of entering judgment after notice and a final approval hearing.

## DISCUSSION

### I.    THE COURT WILL LIKELY BE ABLE TO CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF ENTERING JUDGMENT ON THE SETTLEMENT.

To determine whether the Court will likely be able to certify the Settlement Class for purposes of entering judgment on the Settlement, the Court looks to the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and the requirements of any subsection of Rule 23(b), here subsection (b)(3) (predominance and superiority). For the reasons set forth below, the Settlement Class satisfies all of the necessary requirements for certification.

### A.     The Settlement Class Satisfies the Requirements of Rule 23(a).

#### 1.     The Settlement Class Members are so numerous that joinder of all members is impracticable.

Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable." Numerosity does not require a fixed number of class members but is generally presumed where a class consists of at least forty members. *See, e.g.*, *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *Woestman v. Signode Indus. Grp., LLC*, 594 F. Supp. 3d 993, 997 (N.D. Ill. 2022). Generally, classes of forty or more members meet this requirement. *See, e.g.*, *Swanson*, 415 F.2d at 1333 n.9; *Chandler v. S.W. Jeep–Eagle, Inc.*, 162 F.R.D. 302, 307-08 (N.D. Ill. 1995) (finding fifty class members satisfy numerosity requirement). Impracticable does not mean impossible, "but rather, extremely difficult and inconvenient. When determining whether joinder is impracticable, the court considers not only the size of the class, but also its geographic dispersion, the relief sought, and the ability of individuals to bring their own claims." *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2017 WL 1196990, at *46 (N.D. Ill. Mar. 31, 2017) (cleaned up). Here, there are approximately 2-million individuals who are part of the Settlement Class. *See* Joint Decl. ¶ 7. Joinder is thus impracticable, and the requirements of Rule 23(a)(1) are satisfied.

#### 2.     There are questions of law & fact common to the Settlement Class.

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). To satisfy this 'commonality' requirement, the claims alleged must "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[T]he

commonality requirement has been characterized as a 'low hurdle' easily surmounted." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996) (citations omitted); *Woestman,* 594 at 997. Indeed, "even a single common question will do." *Dukes*, 564 U.S. at 359. "Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common." *Edmondson v. Simon*, 86 F.R.D. 375, 380 (N.D. Ill. 1980) (stating that where a defendant "has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected").

Here, each of the Settlement Class Members share the common, class-wide question of whether and to what extent Defendants disclosed their personal data through the Tracking Tools on their Websites. *See* ECF No. 21 (Amended Complaint) ¶ 219. All Settlement Class Members will also demonstrate damages resulting from the same course of conduct—the disclosure of their personal data via the use of Tracking Tools on Defendants' Websites. That inquiry does not vary from Class Member to Class Member and can be fairly resolved—for settlement purposes—all at once. This requirement in the context of cybersecurity incident class action settlements is readily satisfied. *See, e.g.*, *Remijas v. The Neiman Marcus Group, LLC*, No. 1:14CV01735 (N.D. Ill. Nov. 15, 2019); *Fox v. Iowa Health System*, No. 3:18CV00327 (W.D. Wis. Sep. 16, 2020). Thus, these common questions, and others alleged in the Amended Complaint, are central to the causes of action brought here and will generate common answers that can be addressed on a class-wide basis.

### 3. Class Representatives' claims are typical of Class Members' claims.

Rule 23(a)(3)'s 'typicality' requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." FED.R.CIV.P. 23(a)(3). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013,

1018 (7th Cir. 1992) (cleaned up). The typicality requirement "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Rather than perfect uniformity, the Rule "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id*. Here, the claims of Plaintiffs and Settlement Class Members all stem from the same course of conduct—the installation and use of the Tracking Tools on Defendants' Websites. *See, e.g.*, SA ¶ 3. As such, typicality is satisfied.

### 4. Class Representatives will adequately protect the interests of the Settlement Class.

Rule 23(a)(4) requires that a representative plaintiff be able to provide fair and adequate representation for the class. It requires Plaintiffs to show both "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

A class representative satisfies the adequacy requirement where they are "part of the class" and "'possess the same interest and suffer the same injury'" as the other class members. *See, e.g.*, *Orr v. Shicker*, 953 F.3d 490, 499 (7th Cir. 2020) (quoting *Dukes*, 564 U.S. at 348). Here, Plaintiffs' interests are aligned with those of the Settlement Class Members in that they seek relief for injuries arising out of the same course of conduct through Defendants' installation and use of Tracking Tools. *See, e.g.*, ECF No. 21 ¶¶ 44-91 (discussing Plaintiffs' experiences with Defendants) & 221. Plaintiffs' and Settlement Class Members' personal information was allegedly collected and disclosed—without their knowledge nor consent—by Defendants to third parties like Meta and Google in the same manner and under the same circumstances using the same technology. *Id*. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be

13

eligible for equivalent cash payments from the respective portion of Settlement Fund, either the Sensitive Test or the Non-Sensitive Test Fund, to help remedy the alleged harms they have experienced as a result of Defendants' actions. *See* SA ¶¶ 12.s-t; mm-nn. In addition, proposed Class Counsel have significant experience as class action litigators, particularly in data privacy and security litigation, and are well suited to advocate on behalf of the Settlement Class in this action. *See* Joint Decl. ¶¶ 15-16; 53-55. Thus, the requirements of Rule 23(a) are satisfied.

### B.    The Settlement Class meets the Requirements of Rule 23(b).

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED.R.CIV.P. 23(b)(3). This inquiry is twofold.

### 1.    Common questions of law & fact predominate over any questions affecting only individual members of the Settlement Class.

To satisfy 23(b)(3)'s requirement of predominance, Plaintiffs must show that "the central questions in the litigation are the same for all class members." *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014). The presence of "some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.2d at 1017. Rather, it is "well-established" that "the presence of some individualized issues does not overshadow the common nucleus of operative fact presented when the defendant has engaged in standardized conduct toward the class." *Chandler v. Sw. Jeep-Eagle*, 162 F.R.D. 302, 308 (N.D. Ill. 1995).

In this case, the key, predominant issues are whether Defendants were required to disclose to Settlement Class Members that they used Tracking Tools on Defendants' Websites and the alleged harm that arose when the personal information belonging to Settlement Class Members was allegedly shared, without their consent, with companies like Meta and Google. Other courts

have recognized that the types of common issues arising from similar unauthorized disclosures predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-15 (N.D. Cal. 2018) (finding predominance satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information"). The predominance requirement is satisfied.

> **2.** **The Settlement Class is superior to other methods for the fair & efficient adjudication of the controversy.**

Resolving this Litigation now through this class-wide settlement is superior to individual litigation. Most Settlement Class Members lack the financial resources to prosecute individual actions and the value of any individual claim is too low to justify individual cases. *See* Joint Decl. ¶¶ 49-51. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights…A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Cred. Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Consequently, "resolution…on a class wide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources." *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008).

Here, there is little reason for proposed Class Members to prosecute individual actions. While the total alleged economic harm is significant, each individual claim is too small compared to the costs of separate litigation. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Although the injuries resulting from Defendant's alleged use of the Tracking Tools are real, the cost of individually litigating against Defendant would easily exceed the value of any relief that could be obtained by any one consumer. Thus, a class action is a superior method of adjudication.

In sum, the proposed Class's claims satisfy Rule 23(b)(3)'s requirements and should be certified. Adjudicating individual actions here is impracticable: the amount in dispute for each class member is too small, the technical issues involved are too complex and the required expenses too costly. Thus, the Court may certify the Class for settlement under Rule 23(b)(3).

## II. THE SETTLEMENT MEETS THE REQUIREMENTS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)(2).

The proposed Settlement is fair, reasonable, and adequate considering the relevant factors and the Court should grant preliminary approval and direct notice because it will likely be able to grant final approval.

### A. The Class Representatives & Proposed Class Counsel Have Adequately Represented the Class.

First, the Class Representatives and proposed Class Counsel have adequately represented the Settlement Class as required under Federal Rule 23(e)(2)(A). "The adequacy of class counsel turns on counsel's qualifications, experience, and ability to conduct the litigation." T.*K. v. Bytedance Tech. Co.*, 2022 WL 888943, at *4 (N.D. Ill. Mar. 25, 2022). Courts routinely find that class counsel is adequate where they are experienced in the subject matter of the litigation and have diligently pursued a favorable resolution. *See id.* ("Plaintiffs present unrefuted evidence of their counsel's expertise in litigating consumer class actions, many of which involve privacy rights"); *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 344 (N.D. Ill. 2010) (stating that "class counsel have invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement[, and] have experience pursuing consumer-class-action cases"). Although only informal discovery was conducted prior to the Parties' agreement to the Settlement's terms, "lack of [formal] discovery prior to settlement…does not preclude a court from approving a settlement." *Id* at 350;

16

*see also Butler v. Am. Cable & Tel., LLC*, 2011 WL 2708399, at *9 (N.D. Ill. July 12, 2011) (finding that approval was proper prior to formal discovery where counsel interviewed putative class members and the parties exchanged relevant documents).

Proposed Class Counsel have extensive experience in class action litigation and in cases involving data privacy. *See* Joint Decl. ¶¶ 15-16 & 53-55. Their combined expertise allowed them to, among other things, investigate and evaluate the risks and merits of Plaintiffs' claims and build a strong case in a complex area including the application of legal theories to complex technological matters involving the alleged use of tracking and source code to collect and to disclose putative Class Members' personal information to third parties. *Id.* ¶¶ 12-21. Further, proposed Class Counsel conducted a thorough (and ongoing) pre-suit investigation of their clients' claims as measured against a rapidly developing area of the law. *See id*. Moreover, given their experience in similar pixel tracking matters, Class Counsel was able to request very specific information from Defendants to aid in the settlement negotiations, allowing both parties to evaluate the strengths and weaknesses of the case in a fairly timely and efficient manner. *See id.* ¶¶ 13 & 17.

The Class Representatives have likewise adequately represented the Settlement Class. Plaintiffs were engaged by counsel to assist in pre-suit investigation, reviewed and approved the allegations of various pleadings and reviewed and approved the terms of the Settlement. *See* Joint Decl. ¶ 21, 28 & 54. Accordingly, the Class Representatives and proposed Class Counsel have adequately represented the Class and this factor weighs strongly in favor of preliminary approval. *See* FED.R.CIV.P. 23(e)(2)(A); *see also Bytedance*, 2022 WL 888943, at *17 (counsel qualified where they are experienced in case type & performed substantial research into matter).

**B.     The Settlement was Negotiated at Arm's Length.**

The Settlement likewise satisfies Rule 23(e)(2)(B) as it is the product of hard-fought, arm's-length negotiations overseen by an experienced data privacy and class action mediator, Bruce A. Friedman, Esq., of JAMS, during which Defendants vigorously disputed the allegations in the Complaint. *See* FED.R.CIV.P. 23(e)(2)(B); Joint Decl. ¶¶ 9, 17-19 & 45. Notably, a "settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate." *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001). Further, "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." FED.R.CIV.P. 23(e)(2)(A) & (B) (advisory committee's note to 2018 amendments).

Here, after thoroughly investigating the facts and rapidly evolving law, requesting and reviewing informal discovery and preparing for and participating in mediation, Class Counsel were able to assess the potential risks and rewards of litigation and concluded that Settlement is an excellent result for the Settlement Class. *See* Joint Decl. ¶¶ 12-14. This Settlement was negotiated at arm's length and was procedurally fair, adequate and reasonable. *See* FED.R.CIV.P. 23(e)(2)(B).

**C.     The Settlement has no Obvious Deficiencies & does not Grant Preferential Treatment to any Class Members.**

Rule 23(e)(2)(c) requires examination of the relief provided by the Settlement. The benefits available to Class Members as a result of the Settlement are significant in comparison to the significant risk of obtaining no recovery or reduced recovery after protracted litigation. *See* Joint Decl. ¶¶ 39-47.  This Settlement ensures that Settlement Class Members will be compensated for the harms they have allegedly suffered as a result of the use of the Tracking Tools. Although the precise amount of the cash payment to each Class Member cannot be ascertained until after the

Claim Deadline, the Net Settlement Fund will be funded in a way that ensures that Claims Payments per Class Member will result in adequate relief to the Settlement Class. *See* SA ¶ 16.

The Settlement Benefits here are comparable to results reached in other data privacy cases concerning the use of the Meta pixel. *See, e.g.*, *Doe v. Partners Healthcare Sys., Inc.*, Case No. 1984CV01651-BLS1 (Suffolk Super. Ct.) (final approval granted for non-reversionary common fund settlement of $18.4 million for a class of approximately 3 million patients); *John v. Froedtert Health, Inc.*, Case No. 2023CV001935 (Cir. Court Milwaukee County, Wisc.) (final approval granted for non-reversionary common fund settlement of $2 million for a class of approximately 459,000 patients); *In re Advocate Aurora Health Pixel Litigation*, Case No. 22CV01253 (E.D. Wisc.) (final approval granted for non-reversionary common fund settlement of $2.5 million for a class of approximately 12.25 million class members); *In re Novant Health, Inc,*, Case No. 22CV00697 (M.D. N.C) (final approval granted for non-reversionary common fund settlement of $6.66 million for a class of approximately 1,362,165 million class members). As the relief provided through the Settlement is well within the range of possible approval when considered in light of the Rule 23(e)(2)(c)(i)-(iv) factors, preliminary approval should be granted.

### 1.      The costs, risks and delay of trial & appeal are considerable.

Thee Seventh Circuit has "instructed that the likely complexity, length, and expense of continued litigation are relevant factors district court[s] should consider in determining whether a class action settlement satisfies Rule 23." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015) (citation omitted). The benefits conferred by the Settlement are immediate and significant and the expense, duration and complexity of protracted litigation would be substantial and the outcome uncertain. *See* Joint Decl. ¶¶ 32-36. Proceeding with continued litigation would present risks inherent in class certification and proof of liability—both factors

considered under this Circuit's test for final approval. Although plaintiffs have survived Rule 12 motions in similar pixel-tracking cases, obtaining class certification and an eventual jury verdict is far from certain. *See, e.g.*, *Frasco v. Flo Health, Inc.*, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) (granting summary judgment in part in pixel tracking case); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (denying certification of data breach class). Through the Settlement, Settlement Class Members gain significant benefits in the near term without having to face further risk of not receiving any relief at all.

      **2.**      **The proposed method of distributing relief & processing claims is objective, efficient & fair.**

The Settlement Administrator is responsible for evaluating Claims and distributing Settlement benefits. *See* SA ¶¶ 36-39. All Settlement Class Members may submit a Claim until the Claim Deadline, which will be set by the Court. *Id*. ¶ 12.d. As detailed above, the Claim Form is simple to complete, requiring claimants to provide only their contact information, confirmation that they are Class Members and elect to receive the pro rata cash payment approved by the Court. *See id*., Ex. A. Claim Forms may be submitted by mail or through a Settlement Website created the Settlement Administrator that will contain a summary of the settlement and all relevant case documents. *Id*. ¶¶ 35, 50. Class Members will also be able to contact the Settlement Administrator with any questions through either the Settlement Website, or a toll-free telephone number. Kroll Decl. ¶¶ 15-16.  The Settlement Administrator is charged with reviewing and evaluating each Claim Form, assessing the validity of any required documentation and ensuring Claims are submitted timely and completely. *See* SA ¶¶ 32-43. This procedure is objective, effective and fair.

      **3.**      **The attorneys' fees, costs & expenses as well as the Service Awards that Plaintiffs will request are reasonable and appropriate.**

By separate motion (to be filed at least 14 days before the Claim, Opt-Out, and Objection

Deadline), Plaintiffs will seek Court approval of attorneys' fees, reasonable litigation expenses and service award for the Class Representatives. SA ¶ 70. Doing so will give Settlement Class Members adequate time to evaluate such requests as they consider whether to opt out of or object to the Settlement. Rule 23(e)(2)(C)(iii) requires evaluation of the terms of any proposed attorneys' fees including the timing of any payment. Here, the Settlement provides that attorneys' fees will be paid from the Settlement Fund only after a separate application is made prior to Claim, Opt-Out, and Objection Deadlines so that Settlement Class Members have an opportunity to evaluate the request and respond accordingly. *See id.* ¶¶ 68-70. Under the Settlement, proposed Class Counsel may request up to one-third of the Net Settlement Fund. *Id.* ¶ 68. Both the Short-Form and Long-Form Notice will also clearly explain that Class Counsel may seek up to this amount.

A percentage-of-the-fund method of evaluating the eventual requested fee award is appropriate here. "Courts award attorneys' fees as a percentage of the total fund made available to the Class when counsel's efforts result in the creation of a common fund, and therefore, is entitled to a reasonable attorney's fee from the fund as a whole." *Bartlett v. City of Chicago*, 2017 WL 11885188, at *4 (N.D. Ill. Jan. 31, 2017). Unlike the lodestar method, "'[t]he percentage method is easy to calculate, does not involve the court in fee audits, and does not create incentives to waste time.'" *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 199 (N.D. Ill. 2018) (quotation omitted). Accordingly, the percentage method will be the better method for determining appropriate attorneys' fees in this action. *See also Bytedance*, 2022 WL 888943, at *24 (determining attorneys' fees using the percentage method and noting that the "percentage method is employed by the vast majority of courts in the Seventh Circuit.").

Moreover, the percentage that proposed Class Counsel may request—up to one-third of the Net Settlement Fund—is reasonable. In evaluating the reasonableness of a request for attorney's

fees, Seventh Circuit courts reference the "*net* value of a settlement as a reference for awarding fees, not counting administrative costs and incentive awards." *Leung v. XPO Logistics, Inc.,* 326 F.R.D. 185, 200 (N.D. Ill. 2018). "Courts routinely hold that one-third of a common fund is an appropriate attorneys' fee award in class action settlements[.]" *Wolfe v. TCC Wireless, LLC*, N2018 WL 11215318, at *3 (N.D. Ill. Mar. 12, 2018) (collecting cases). Here, the Settlement Agreement specifies that attorneys' fees requested by Class Counsel will not exceed one-third of the Net Settlement Fund, defined as the Settlement Fund after deducting all Settlement Administration Costs, litigation expenses, and approved Service Awards. *See* SA ¶¶ 12(r), 68. This percentage, as well as the methodology by which it is calculated, aligns with practice in the Seventh Circuit.

The proposed Service Award to each Class Representative of $2,500 is also well within the range of awards granted to named plaintiffs in class proceedings. In fact, "empirical data indicates that the requested incentive awards [of $2,500] are modest…the median incentive award per plaintiff…is over twice the amount that Class Counsel requests here." *In re Tiktok, Inc. Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 949 (N.D. Ill. 2022) (approving $2,500 incentive awards in privacy class action). Simply put, proposed Class Counsel's request for fees and expenses as well as for modest Service Awards is well supported by law and evidence and are additional bases for preliminarily approving the Settlement. *See* FED.R.CIV.P. 23(e)(2)(C)(iii).

### 4. Disclosure of side agreements.

There are no additional agreements that require identification or examination under Rule 23(e)(3). *See* Joint Decl. ¶ 45.

### D. The Settlement Treats Class Members Equitably Relative to Each Other.

The Court must also consider whether the Settlement treats Settlement Class Members equitably relative to one another. *See* FED.R.CIV.P. 23(e)(2)(D). Here, the Settlement treats all

Settlement Class Members fairly. The Settlement Class is divided into two subclasses: (1) the Sensitive Test Subclass, consisting of individuals who purchased sensitive tests from Defendants, such as tests for sexually transmitted diseases, and (2) the Non-Sensitive Test Subclass, consisting of those who purchased products other than sensitive tests from Defendant. SA ¶¶ 12.t, 12.nn. Sensitive Test Subclass Members who submit a Valid Claim Form will receive a *pro rata* share of the Sensitive Test Settlement Fund, consisting of $2,640,000.00 (52.8% of the total Settlement Fund) after deduction of 52.8% of the Notice and Settlement Administration Costs, attorneys' fees and costs awarded by the Court to Class Counsel, and Service Awards awarded by the Court. *Id.* ¶ 12.mm. Non-Sensitive Test Subclass Members who submit a Valid Claim Form will receive a *pro rata* share of the Non-Sensitive Test Settlement Fund, consisting of $2,360,000.00 (47.2% of the total Settlement Fund) after deduction of 47.2% of Notice and Settlement Administration Costs, attorneys' fees and costs awarded by the Court to Class Counsel, and Service Awards awarded by the Court. *Id* ¶ 12.s. This Rule 23(e) factor is thus satisfied, and because the Settlement satisfies all of Rule 23(e) requirements, preliminary approval should be granted.

## III.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED.R.CIV.P. 23(c)(2)(B) (permitting notice to be sent by "U.S. Mail, electronic mail, or other appropriate means"). With regard to contents, a notice is the best practicable under the circumstances where it "is reasonably calculated, under all of the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Program negotiated and agreed to here is the best practicable under the specific circumstances of this case. *See* Joint Decl. ¶¶ 56-59. The Parties negotiated the form of the Notice with Kroll's aid. *Id*. Notice will reach all members for whom Defendants have a record by email and otherwise by U.S. mail for Settlement Class Members for whom Defendants provide a valid mailing address. *See* SA ¶¶ 45-47. The proposed Short-Form Notice is clear, concise and informs Settlement Class Members of the general terms of the Settlement, the proposed allocation of attorneys' fees and Service Awards and provides information regarding the date, time and place of the final approval hearing. *See* SA, Ex. C. Further, the Short-Form Notice directs Settlement Class Members to the Settlement Website where they can view additional information about the Settlement and its terms and review the Long-Form Notice and other important documents. *Id*. As such, the Notice Program should be approved. *See, e.g.*, *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 351 (finding similar email notice to settlement class members was the best practicable and satisfied concerns of due process *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 596 (N.D. Ill. 2011) (similar with notice plan of direct mail).

## IV. THE COURT SHOULD APPOINT THE SETTLEMENT ADMINISTRATOR.

In connection with the Notice Program and Settlement Administration, Plaintiffs request that the Court appoint Kroll to serve as the Settlement Administrator. Kroll has a trusted and proven track record of supporting class action administration and extensive legal administration experience. *See* Joint Decl. ¶ 56, Kroll Decl. ¶¶ 1-3.

## V. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

The last step in the Settlement approval process is a final approval hearing during which

the Court will make its final evaluation of the Settlement based on, among other things, Class Members' responses to the Notice, which Class Counsel expect to be overwhelmingly positive. *See* Joint Decl. ¶¶ 36-38. Plaintiffs and proposed Class Counsel request that the Court schedule the Final Approval Hearing no earlier than 130 days after entry of the Preliminary Approval Order.[3]

## CONCLUSION

The proposed Settlement, reached between experienced counsel after receipt and evaluation of informal discovery, is within the range of reasonableness and readily meets the standards for preliminary approval. Accordingly, Plaintiffs respectfully request this Honorable Court to an order:

(i)    preliminarily approving the Settlement and provisionally certifying the Settlement Class in accordance with the proposed Preliminary Approval Order;

(ii)    approving the Notice Program and directing that Notice be distributed to the Settlement Class Members in accordance with the Notice Program;

(iii)    appointing Kroll Settlement Administration as Settlement Administrator;

(iv)    approving the Claim Form and directing the Settlement Administrator to administer the Notice Program and Settlement in accordance with the provisions of the Settlement Agreement;

(v)    appointing Plaintiffs Ashley Reedy, Joshua Cook, Melody Schoon, Jasmine Smith, Shadari Bush and Sedena McClain as Class Representatives;

(vi)    appointing the law firms of Siri & Glimstad LLP and Almeida Law Group LLC as Class Counsel;

(vii)    scheduling a Final Approval Hearing to consider the entry of the Final Approval Order and Judgment and request for Attorneys' Fees, Expenses and Service Awards, to be held approximately 130 days after entry of the Preliminary Approval Order and

(viii)    awarding all such other relief as the Court deems just and proper.

---

[3] The Proposed Preliminary Approval Order, attached as Exhibit D to the Settlement Agreement, will also be provided to the Court as an editable Word document.

**Dated:** November 25, 2024

*/s/ David S. Almeida*
David S. Almeida
Matthew J. Langley
Britany A. Kabakov
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com
matt@almeidalawgroup.com
britany@almeidalawgroup.com

David DiSabato
**SIRI & GLIMSTAD LLP**
8 Campus Drive, Suite 105, PMB#161
Parsippany, New Jersey 07054
 (212) 532-1091
ddisabato@sirillp.com

Mason A. Barney
Tyler Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
(212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com

***Counsel for Plaintiffs & the Settlement Class***