**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ASHLEY REEDY, JOSHUA COOK, MELODY SCHOON, JASMINE SMITH SHADARI BUSH and SEDENA MCCLAIN, *on behalf of themselves & all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>EVERLYWELL, INC. and BABY SOMEDAY, INC. D/B/A NATALIST,<br><br>Defendants. | Case No. 1:24-cv-02713<br><br>Hon. Andrea R. Wood |

# MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS


David S. Almeida
Matthew J. Langley
Britany A. Kabakov
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com
matt@almeidalawgroup.com
britany@almeidalawgroup.com

Mason A. Barney
Tyler Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
(212) 532-1091
tbean@sirillp.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

FACTUAL AND PROCEDURAL OVERVIEW OF THE LITIGATION .......... 2

I. NEGOTIATION AND SETTLEMENT .......... 2

II. SUMMARY OF SETTLEMENT TERMS .......... 3

LEGAL STANDARD .......... 4

ARGUMENT .......... 5

I. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED .......... 5

A. The Percentage of the Fund Method is Appropriate for Calculating Fees .......... 5

B. A Fee Request of the One-Third of the Common Fund is Fair and Reasonable .......... 7

1. Attorneys' Fees of One-Third of the Fund are Consistent with the Market Rate .......... 7

2. The Request for One-Third of the Fund is Consistent with the Results Obtained by Class Counsel and the Attorneys' Fees in Similar Cases .......... 8

3. Class Counsel Faced a Significant Risk of Non-Payment, which they should be Compensated for Accepting .......... 10

4. The Skill and Standing of Class Counsel Supports the Requested Fee .......... 11

5. Even at this Early Stage of Litigation, Class Counsel Expended Substantial Effort to Secure a Positive Result for the Class .......... 12

a) Class Counsel's Substantial Pre-Suit Investigation Provided the Necessary Information to Reach this Settlement .......... 12

b) Class Counsel Performed Thorough Plaintiff Vetting and Expended Significant Effort to Draft the Complaints .......... 13

c) Class Counsel Engaged in Extensive Settlement Negotiations to Reach an Excellent Result for the Class .......... 13

II. CLASS COUNSEL SHOULD BE PERMITTED TO RECOVER THE COSTS AND EXPENSES THEY PAID BECAUSE THEY WERE NECESSARY TO PROSECUTE THE LITIGATION .......... 14

III. THE PLAINTIFFS SHOULD RECEIVE REASONABLE SERVICE AWARDS OF $2,500 EACH .................................................................... 14

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advoc. Aurora Health Pixel Litig.*,
740 F. Supp. 3d 763 (E.D. Wis. 2024) .......... 15

*Behrens v. Landmark Credit Union*,
2018 WL 3130629 (W.D. Wis. June 26, 2018).......... 8

*Birchmeier v. Caribbean Cruise Line, Inc.*,
896 F.3d 792 (7th Cir. 2018) .......... 8

*BNVS Transp. LLC v. C&K Trucking, LLC*,
2023 WL 11983614 (N.D. Ill. Feb. 22, 2023) .......... 15

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 4, 5

*Briggs v. PNC Fin. Servs. Grp., Inc.*,
2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) .......... 15

*City of Greenville v. Syngenta Crop Prot., Inc.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012) .......... 7

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) .......... 5

*Corona v. Sony Pic. Enter., Inc.*,
No. 2:14-cv-9600 (C.D. Cal.) .......... 10

*Florin v. Nationsbank of Georgia, N.A.*,
34 F.3d 560 (7th Cir. 1994) .......... 6

*Furman v. At Home Stores LLC*,
2017 WL 1730995 (N.D. Ill. May 1, 2017) .......... 15

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) .......... 6, 7

*Hartley v. Univ. of Chi. Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023).......... 10

*In re Capital One Tel. Cons. Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) .......... 6

*In re Continental Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .......... 14

*In re Dairy Farmers of Am., Inc.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) .......... 7

*In re Novant Health, Inc.*,
2024 WL 3028443 (M.D.N.C. June 17, 2024) .......... 15

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......... 11

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .......... 5, 6

*In re Tiktok, Inc., Cons. Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) .......... 7, 9, 1

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) .......... 6

*In re Warner Comm. Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) .......... 11

*Karpilovksy v. All Web Leads, Inc.*,
No. 2017-cv-01307, Doc. No. 173 (N.D. Ill. Aug. 8, 2019) .......... 8

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 2006) .......... 6, 7, 8

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015) .......... 5, 6

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .......... 10

*Lueng v. XPO Logistics*,
326 F.R.D. 185 (N.D. Ill. 2018) .......... 5

*Martin v. Caterpillar Inc.*,
2010 WL 11614985 (C.D. Ill. Sept. 10, 2010) .......... 14

*McKinnie v. JP Morgan Chase Bank, NA*,
678 F. Supp. 2d 806 (E.D. Wis. 2009) .......... 4

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992) .......... 13, 14

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) .......... 10

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) .......... 6, 10

*Touhey v. United States*,
2011 WL 3179036 (C.D. Cal. July 25, 2011) .......... 10

*Will v. Gen. Dynamics Corp.*,
2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) .......... 7

*Williams v. Gen. Elec. Cap. Auto Lease*,
1995 WL 765266 (N.D. Ill. Dec. 26, 1995) .......... 6

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) .......... 7

*Woodrow v. Sagent Auto LLC*,
No. 18-CV-1054-JPS, 2019 U.S. Dist. LEXIS 118901 (E.D. Wis. July 17, 2019).......... 7

*Yarrington v. Solvay Pharm., Inc.*,
697 F. Supp. 2d 1057 (D. Minn. 2010) .......... 14

*Young v. Cnty. of Cook*,
2017 WL 4164238 (N.D. Ill. Sept. 20, 2017) .......... 7

**Rules**

FED.R.CIV.P. 23(h) .......... 4

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) and this Court's December 4, 2024 Order Granting Preliminary Approval of Class Action Settlement and Notice Plan [Doc. No. 29], Plaintiffs Ashley Reedy, Joshua Cook, Melody Schoon, Jasmine Smith, Shadari Bush, and Sedena McClain (collectively, "Plaintiffs") and their counsel, Almeida Law Group LLC and Siri & Glimstad LLP (collectively, "Class Counsel") respectfully submit this memorandum of law in support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards.[1]

## INTRODUCTION

Plaintiffs and Class Counsel achieved a superb class action settlement with Defendants Everlywell, Inc. ("Everlywell") and Baby Someday, Inc. d/b/a Natalist ("Natalist") (together, "Defendants" and collectively with Plaintiffs, the "Parties") that established a $5,000,000.00 non-reversionary common fund for the benefit of all the Class Members. The Settlement resolves claims arising from Defendants' alleged disclosure of Plaintiffs' and Class Members' personally identifying information and protected health information (collectively, the "Private Information") without their consent. By their Complaint, Plaintiffs asserted that their Private Information was allegedly disclosed to third party advertisers like Meta and Google through Tracking Pixels that were installed on Defendants' public Websites, www.everlywell.com and www.natalist.com. The Settlement provides that every Settlement Class Member who files a valid claim will receive a direct cash payment from the Settlement Fund to help remedy the harms they claim to have experienced because of Defendants' alleged actions.

To date, the Notice Program has been very successful, and the Settlement Class is reacting favorably to the Settlement, with over 55,000 Class Members already filing claims. Accordingly, the outstanding Settlement benefits and the Settlement Class's positive reaction to the Settlement support

[1] Unless otherwise indicated, capitalized terms refer to and have the same meaning as those set forth in the Settlement Agreement, which is attached as Exhibit 1 to the Joint Declaration. *See* Doc. No. 28-1.

Plaintiffs' and Class Counsel's request for attorneys' fees of one-third of the Settlement Fund (*i.e.*, $1,666,666.00) and litigation expenses totaling $10,836.12. Likewise, Plaintiffs request that they be compensated for the time and effort they put in on behalf of the Class through service awards of $2,500.00 each. As will be shown below, these requests are entirely reasonable given the excellent result achieved for the Class.

## FACTUAL AND PROCEDURAL OVERVIEW OF THE LITIGATION

### I. NEGOTIATIONS AND SETTLEMENT.

On April 4, 2024, Plaintiffs commenced this putative class action lawsuit by filing a Complaint alleging that their personal data was collected and divulged to Meta and Google through Defendant Everlywell's use of Meta Pixel and Google Analytics software on its Website. *See* Doc. No. 1. Once counsel for Everlywell filed appearances, the Parties engaged in extensive communications and agreed to the informal exchange of information so that each side could thoroughly understand and evaluate, among other things, the nature and extent of Defendant Everlywell's use of Tracking Tools on its website as well as investigate the facts, evaluate the asserted claims and potential claims and defenses and assess the scope of damages (if Plaintiffs were ultimately able to prevail in the litigation). *See* Declaration of Class Counsel in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards ("Counsel Decl."), ¶¶ 11-12. Through these discussions, the Parties determined that Baby Someday Inc. d/b/a Natalist, a subsidiary entity of Everlywell, should be included in the mediation given Natalist's similar use of Tracking Technologies.

On August 7, 2024, the Parties engaged in a full-day mediation before Mr. Bruce A. Friedman, *Esq*., a private mediator with JAMS. *See id.* ¶ 11. Leading up to and in preparation for the mediation, Defendants provided additional class information and the Parties each prepared comprehensive mediation statements laying out, among other things, their likelihood of success in the litigation and the structure and terms for a potential class-wide resolution. *Id.* The mediation resulted in a class-

wide settlement in principle and thereafter the Parties worked extensively to negotiate and execute a formal settlement agreement.

Thereafter, on September 6, 2024, Plaintiffs filed an Amended Class Action Complaint adding Natalist as an additional defendant and asserting six causes of action against both Defendants: (i) violation of the federal Electronic Communications Privacy Act for an Unauthorized Interception, Use and Disclosure, (ii) negligence, (iii) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*; (iv) violations of the Illinois Eavesdropping Statute, 720 Ill. Comp. Stat. 5/14, *et seq.*; (v) violations of the Nevada Deceptive Trade Practices Act, NRS Ch. 598 and (vi) violations of the Maryland Wiretap Act, Md. Code Ann., Cts. & Jud. Proc. § 10-402. *See generally* Doc. No. 21. Subsequently, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement on November 25, 2024. *See* Doc. No. 28. The Court granted the same on December 20, 2024. *See* Doc. No. 30.

## II. SUMMARY OF SETTLEMENT TERMS.

The Settlement is the result of months of arm's-length negotiations and hard bargaining. The Parties exchanged informal discovery including, but not limited to, information regarding the class size, the number of Class Members who used the Websites, information regarding the purchases made by those individuals, and information supporting Plaintiffs' damages allegations. Counsel Decl., ¶ 11.

After a series of offers and demands during the mediation, the Parties agreed to a settlement consisting of a $5,000,000.00 non-reversionary Settlement Fund to provide compensation to the approximately 2,000,000 eligible Settlement Class Members.[2] The Settlement Class is divided into two Subclasses: (1) the Sensitive Test Subclass, consisting of the approximately 660,000 individuals who used Defendants' Websites to purchase sensitive test kits and other products, such as tests for

[2] *See* Doc. No. 28-1, Joint Declaration of Counsel, Exhibit A – Settlement Agreement and Release ("Settlement Agreement" or "S.A."), ¶¶ 12(rr)-(tt).

sexually transmitted infections; and (2) the Non-Sensitive Test Subclass, consisting of the approximately 1,340,000 individuals who used Defendants' Websites to purchase other products. *See* S.A. ¶¶ 12(t), (nn). Accordingly, the Settlement Fund is also divided into two funds, with members of each Subclass receiving a *pro rata* share of their portion of the fund (after accounting for fees, costs, and expenses): (1) the Sensitive Test Settlement Fund, funded in the amount of $2,640,000.00, which provides benefits to the Sensitive Test Subclass and (2) the Non-Sensitive Test Settlement Fund, funded in the amount of $2,360,000.00, which provides benefits to the Non-Sensitive Test Subclass Members. *Id.* ¶¶ 12(s), (mm). Notice and Settlement Administrations costs, as well as any court-approved attorney's fees, expenses, and Services Awards, are allocated between the Sensitive and Non-Sensitive Subclass Funds in the same proportion as the Settlement Fund itself. *Id.* To participate in the Settlement and receive a cash payment, Class Members merely need to submit a paper or online Claim Form on or before the Claim Deadline. *Id.* ¶ 35.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(h) allows a district court supervising a class action to "award reasonable attorney's fees and nontaxable costs that are authorized by law." FED.R.CIV.P. 23(h). The United States Supreme Court observes that attorneys who represent a class and whose efforts achieve a benefit for the class are "entitled to a reasonable attorney's fee from the fund as a whole" as appropriate compensation for their services to the class. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). District courts have discretion in setting fee awards in class action cases. *See, e.g.*, *McKinnie v. JP Morgan Chase Bank, NA*, 678 F. Supp. 2d 806, 814 (E.D. Wis. 2009) ("The district court has considerable discretion to determine the reasonableness of attorneys' fees because it has the greatest familiarity with the case and is in the best position to scrutinize the attorneys' work." (internal citations omitted)). In common fund cases, such as this case, "class counsel who wins

a settlement or judgment creating a commonly held fund for the benefit of the class is entitled to a reasonable fee drawn from that fund." *Id.* (citing *Boeing*, 44 U.S. at 478).

## ARGUMENT

### I. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED.

Class Counsel took this matter on a pure contingency basis with no promise or guarantee of payment and advanced all case related expenses and costs out of their own pockets. Despite the uncertainty attendant with such a rapidly developing area of law, Class Counsel achieved an excellent result for the Class, where each Settlement Class Member who submits a valid claim will receive a significant cash payment. For their work and, most notably, their results, Class Counsel merely seek the standard market rate for successful class actions, namely, one-third of the Settlement Fund.

#### A. The Percentage of the Fund Method is Appropriate for Calculating Fees.

When analyzing a request for attorneys' fees, ultimately, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). To that end, the Seventh Circuit affords district courts considerable discretion to determine the "market rate" based on either a lodestar or percentage of the fund method. *See, e.g.*, *Lueng v. XPO Logistics*, 326 F.R.D. 185, 204 (N.D. Ill. 2018).

In "choosing between the percentage and lodestar approaches," courts "look to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 500-01 (N.D. Ill. 2015) (*citing Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998)). In class action litigation, where "the normal practice [is] to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery," *Kolinek*, 311 F.R.D. at 500-01, state and federal courts in Illinois are in near unanimous agreement that the percentage-of-the recovery approach best yields the fair market price for the services provided by counsel to the

class. *See, e.g.*, *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 2006) ("When the prevailing method of compensating lawyers for similar services is the contingent fee, then the contingent fee is the 'market rate.'"); *Williams v. Gen. Elec. Cap. Auto Lease*, 1995 WL 765266, at *1 (N.D. Ill. Dec. 26, 1995) (noting that "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("[I]t is commonplace to award the lawyers for the class a percentage of the fund" recovered); *Sutton v. Bernard*, 504 F.3d 688, 693 (7th Cir. 2007) (directing district court on remand to consult the market for legal services so as to arrive at a reasonable percentage of the common recovery); *In re Capital One Tel. Cons. Prot. Act Litig.*, 80 F. Supp. 3d 781, 794 (N.D. Ill. 2015) ("[T]he court agrees with Class Counsel that the fee award … should be calculated as a percentage of the money recovered[.]").

The percentage-of-the-recovery method best replicates the *ex-ante* market value of the services that Plaintiffs' counsel provided to the Settlement Class. Courts have explained that "[t]he percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989). The percentage-of-the-recovery method aligns counsel's interests with those of the class because it measures the reasonableness of the fee based on the results the lawyers achieve for their clients. *See, e.g.*, *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 720-21 (7th Cir. 2001). It is also simpler to apply. *Id.*; *see also Kolinek*, 311 F.R.D. at 501 (percentage of the ultimate recovery method appropriate for awarding fees "because fee arrangements based on the lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently …, something a class … would not be interested in doing").

Moreover, a lodestar cross-check is not required in the Seventh Circuit. *See, e.g.*, *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("[C]onsideration of a lodestar check is not an issue of required methodology."); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 849 (N.D. Ill. 2015) ("A district court is under no obligation to cross check fees against the lodestar."). To the contrary, courts in this Circuit hold that "[t]he use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (citing cases). Because the Settlement here involves a common fund, the percent of benefit method for calculating attorneys' fees is appropriate.

**B. A Fee Request of One-Third of the Common Fund is Fair and Reasonable.**

*1. Attorneys' Fees of One-Third of the Fund are Consistent with the Market Rate.*

Class Counsel's request for one-third of the Settlement Fund is reasonable, consistent with market rates and with Seventh Circuit precedent. *See, e.g.*, *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("The typical contingent fee is *between 33 and 40 percent*." (emphasis added)). "Courts throughout the Seventh Circuit routinely consider the fee awards in other class actions and conclude that a one-third contingency fee is standard." *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 909 (S.D. Ill. 2012); *see also In re Tiktok, Inc., Cons. Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (finding that in complex litigation, consumer protection litigation, and class action litigation generally, the "market fee" is a one-third contingency fee). In fact, "[f]ees up to one-third of the common fund are presumed to be reasonable." *Woodrow v. Sagent Auto LLC*, No. 18-CV-1054-JPS, 2019 U.S. Dist. LEXIS 118901, at *3 (E.D. Wis. July 17, 2019).

If anything, "a rate of one-third of the total recovery is on the *low end of the market* contingency rate for" complex class action litigations because courts within the Seventh Circuit consistently award attorneys' fees greater than that in class action cases. *Young v. Cnty. of Cook*, 2017 WL 4164238, at *5 (N.D. Ill. Sept. 20, 2017) (emphasis added); *see also Kirchoff v. Flynn*, 786 F.2d

320, 324 (7th Cir. 1986) (finding 40% to be "the customary fee in tort litigation"); *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming fee award in TCPA class action that included, *inter alia*, "the sum of 36% of the first $10 million"). Thus, here, where Class Counsel achieved a substantial recovery for the Class, their request for one-third of the fund is clearly reasonable. *See also Karpilovksy v. All Web Leads, Inc.*, No. 2017-cv-01307, Doc. No. 173 (N.D. Ill. Aug. 8, 2019) (approving fees amounting to 35% of the entire settlement fund); *Behrens v. Landmark Credit Union*, 2018 WL 3130629, at *6 (W.D. Wis. June 26, 2018) ("And generally, a 33 to 40 percent contingency fee is considered consistent with the market rate and reasonable.").

2. *The Request for One-Third of the Fund is Consistent with the Results Obtained by Class Counsel and the Attorneys' Fees in Similar Cases.*

As noted, *infra*, the Settlement Class is divided into two subclasses: the Sensitive Test Subclass and the Non-Sensitive Test Subclass. Recognizing that the privacy injury suffered by Sensitive Test Subclass members is greater than that of Non-Sensitive Test Subclass Members, Class Counsel calibrated the Settlement structure to provide a greater benefit to the Sensitive Test Subclass. Although no class action lawsuit ever results in 100% class participation, dividing the total fee by the number of class members is an effective way of comparing the results in other similar cases. Here the Sensitive Test Subclass Members are entitled to a *pro rata* payment from the $2,640,000 Sensitive Test Settlement Fund—equivalent to $4-per-Subclass Member (if the claims rate were 100%). This per-head amount compares favorably to settlements approved in similar matters involving the disclosure of protected health information through tracking pixels on a medical provider's website.

| **Case Name** | **Case Number** | **Settlement Amount** | **Class Size** | **Per Person** |
|---|---|---|---|---|
| *John v. Froedtert Health, Inc.* | No. 23-CV-1935 (Milwaukee County Circuit Court) | $2,000,000 | 459,000 | $4.35 |
| *In re Novant Health, Inc.* | No. 1:22-cv-00697 (M.D.N.C.) | $6,660,000 | 1,362,165 | $4.89 |
| *In re Advocate Aurora Health Pixel Litigation* | No. 19-1651 (E.D. Wis.) | $12,225,000 | 2,500,000 | $4.89 |

The Non-Sensitive Test Settlement Fund is funded in the amount of $2,360,000—equivalent to $1.76-per-Non-Sensitive Test Subclass Member. Although Class Counsel is unaware of another pixel tracking settlement structured similarly to the present matter, the related area of data breach class action provides a useful analogue. As with many data breach matters, the claims alleged by Plaintiffs on behalf of the Non-Sensitive Test Subclass stem from the disclosure of information held by a service provider without Subclass Members' consent or knowledge. However, unlike in most data breach matters, the information in-question has not been exfiltrated by cybercriminals and the recipient of the disclosure is known to Subclass Members and Defendants. As the chart below demonstrates, recovery by the Non-Sensitive Subclass far exceeds that of many data breach actions, including those arising out of the theft of class members' data by malicious actors with fraudulent intent, which arguably presents more of a data privacy risk than the facts of the instant matter.

| Case Name | Case Number | Settlement Amount | Class Size | Per Person |
|---|---|---|---|---|
| *In re Anthem, Inc. Data Breach Litig.*, | Case No. 15-MD-02617-LHK (N.D. Cal.) | $115,000,000 | 79,000,000 | $1.46 |
| *In re Target Corp. Customer Data Sec. Breach Litig* | MDL No. 14-2522 (PAM) (D. Minn.) | $23,500,000 | 110,000,000 | $0.21 |
| *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.* | No. 14-MD-02583-TWT (N.D. Ga.) | $28,400,000 | 52,000,000 | $0.55 |
| *In re Yahoo! Inc. Customer Data Sec. Breach Litig.* | No. 16-MD-02752-LHK (N.D. Cal.) | $117,500,000 | 194,000,000 | $0.61 |

The Settlement Class has responded favorably to Class Counsel's efforts; as of February 28, 2025, the Settlement Administrator reports that 55,411 claims have been filed, which equates to 2.86% of the total class members. Counsel Decl., ¶ 5. This percentage is on the high end for a typical claims rate in a data privacy class action where the claims rates usually range from 1-3%. *See, e.g.*, *In re Tiktok, Inc., Cons. Priv. Litig.*, 565 F. Supp. 3d 1076, 1090 n.6 (N.D. Ill. 2021) (collecting cases and expert testimony showing that claims rates of less than 1.5% are typical in consumer class

actions); *Corona v. Sony Pic. Enter., Inc.*, No. 2:14-cv-9600 (C.D. Cal.), ECF Nos. 145-1 at 11 n.8 & 164 at *2 (approving settlement with 0.7% claims rate); *Touhey v. United States*, 2011 WL 3179036, at *7 (C.D. Cal. July 25, 2011) (approving a class action settlement with a 2% claims rate).

Notably, as the Claim Deadline is on March 19, 2025, the claims period remains open, meaning that the claims rate will increase as additional Settlement Class Members submit claims.

*3. Class Counsel Faced a Significant Risk of Non-Payment, which they should be Compensated for Accepting.*

Because Class Counsel litigated this action on a purely contingent basis and given the uncertainties of data privacy and security class actions, the risk of nonpayment was significant, which further justifies awarding the fees sought here. The Seventh Circuit has held that that in any class action case, "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit." *Sutton*, 504 F.3d at 694. Accordingly, contingency fees "compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013).

Courts within this district recognize that "[d]ata privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel." *TikTok*, 617 F. Supp. 3d at 941. Indeed, similar pixel data privacy cases have faced substantial hurdles in making it past even the pleading stage. *See, e.g.*, *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 C 5891, 2023 U.S. Dist. LEXIS 200619 (N.D. Ill. Nov. 8, 2023); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) (same).

This case is no exception. Defendant has emphatically denied Plaintiffs' allegations of wrongdoing and in continued litigation would have vigorously defended against Plaintiffs' individual and representative claims. This Litigation involves complicated and technical facts, highly skilled

opposing counsel, and challenging issues for liability, class certification, and damages, to name a few. Were litigation to proceed, there would be numerous expert reports and costly depositions, which would present significant risks and expenses. As in any data privacy class action, establishing causation and damages on a class-wide basis is largely uncharted territory and full of uncertainty. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (acknowledging risk of small recovery where estimates of damages varied). Indeed, there are numerous substantial hurdles that Plaintiffs would have had to overcome before the Court might find a trial appropriate. Moreover, in complex litigation, even a victory at trial does not spell ultimate success. Both trial and judicial review are unpredictable and can erode a recovery or eliminate it altogether. *See, e.g.*, *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985).

Despite these risks, Class Counsel took on this litigation on a purely contingent basis and courts have long recognized that counsel should be encouraged to take on such risky cases by providing appropriate recovery.

*4. The Skill and Standing of Class Counsel Supports the Requested Fee.*

The experience, reputation and ability of class counsel is another factor courts evaluate in determining an appropriate attorneys' fees award. Here, Class Counsel relied upon their significant experience handling data privacy class actions across the country to negotiate a non-reversionary common fund settlement with experienced defense counsel. Counsel Decl., ¶ 3. Both Almeida Law Group LLC and Siri & Glimstad LLP are national firms with significant experience in consumer class action and data privacy litigation, including cases involving the Tracking Tool present on Defendants' Websites. *Id.*; *see also* Doc. No. 28-1, Exhibits 2-3 (Class Counsels' firm resumes).

Class Counsel utilized their experience to efficiently resolve this Litigation after a full-day mediation with a qualified mediator and to reach a class-wide settlement in a cutting-edge, highly uncertain and largely untested area of the law. *Id.* ¶ 10. Class Counsel's experience in handling many

other data privacy class action cases permitted Class Counsel to efficiently establish the $5,000,000.00 non-reversionary common fund. Class Counsel's skill in efficiently negotiating a robust settlement despite such serious legal risk of achieving no recovery for the Class justifies the requested fee from the common fund. Accordingly, this factor further supports Class Counsel's request for attorneys' fees.

5. *Even at this Early Stage of Litigation, Class Counsel Expended Substantial Effort to Secure a Positive Result for the Class.*

Class Counsel should be rewarded for litigating this matter with considerable diligence and efficiency. Although this matter was resolved at an early stage of litigation, Class Counsel and Plaintiffs conducted a substantial pre-suit investigation, which enabled a timely and favorable resolution on behalf of Class Members. As a result, Class Counsel were able to efficiently and effectively reach a favorable resolution to this litigation.

a. Class Counsel's Substantial Pre-Suit Investigation Provided the Necessary Information to Reach this Settlement.

The highly technical subject matter of this case necessitated a substantial pre-suit investigation. As Plaintiffs' Complaint demonstrates, Class Counsel performed a thorough analysis of the Defendants' Websites to determine what types of Tracking Tools, including pixels and cookies, were present on the Websites; what Website user actions served as 'triggers' for the Websites' collection of user information; what specific information was conveyed with regards to each trigger; and the mechanism through which that information could be made personally identifiable. Counsel Decl., ¶ 11.

This substantial investigation enabled Class Counsel to make well-informed decisions about presenting Plaintiffs' claims in this case, including selecting suitable Class Representatives, researching and drafting a thorough and detailed Complaint, and participating knowledgably in protracted settlement negotiations.

b. Class Counsel Performed Thorough Plaintiff Vetting and Expended Significant Effort to Draft the Complaints.

Class Counsel and other Plaintiffs' Counsel worked with many potential Class Members to thoroughly review Class Members' claims to locate Plaintiffs who were qualified, presented compelling cases, and were willing to publicly serve as Class Representatives. *Id*. As part of that effort, Class Counsel created extensive Plaintiff vetting questionnaires for pre-screening and spent significant time speaking with Class Members about their experience with Defendants' Websites and services to further refine the allegations in the Complaint. *Id*. Then, Class Counsel performed extensive research to identify viable claims, ultimately identifying causes of action under federal, state, and common law. *Id*. Once Plaintiffs were made aware of a second Defendant necessary to the Litigation, Plaintiffs filed an amended complaint. *Id*.

c. Class Counsel Engaged in Extensive Settlement Negotiations to Reach an Excellent Result for the Class.

Class Counsel and Plaintiffs also engaged in detailed, protracted settlement negotiations with Defendants that included a full-day mediation session before Mr. Bruce A. Friedman, *Esq*., a private mediator with JAMS. *Id*. In preparation for the mediation, Class Counsel issued detailed settlement information requests to Defendants so that Plaintiffs would be in a position to make informed settlement demands and participate in productive settlement negotiations. *Id*. Further, Class Counsel conducted substantive legal research to analyze the strengths and weaknesses of their legal claims. *Id*. As a result, Class Counsel was well prepared for settlement negotiations.

In awarding attorneys' fees, courts have consistently recognized and rewarded class counsel for moving the litigation to conclusion with diligence and efficiency. *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) (noting class counsel's efficiency in resolving the case as a factor supporting the requested fee award); *see also Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (noting that "Plaintiffs' counsel moved the case along expeditiously, and made every

effort to limit duplicative efforts and to minimize the use of judicial resources in the management of the case" and "[c]ounsel exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the Class"). This factor, like the others, weighs in favor of approving Class Counsel's fee request.

## II. Class Counsel Should be Permitted to Recover the Costs and Expenses they Paid Because They Were Necessary to Prosecute the Litigation.

Despite the risk inherent in a contingency fee case such as this one, Class Counsel willingly incurred $10,836.12 in total hard costs in prosecuting and settling this action. This amount consists of costs that are attributable to ordinary and necessary litigation expenses, such as filing fees, service of process fees, mediation costs, and research fees for legal platforms like LexisNexis. *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). Plaintiffs' counsel has reviewed these costs to ensure that they are not excessive or unnecessary. As one Illinois court has observed, "Class Counsel, proceeding on a contingent-fee basis with a high risk of no recovery, have a strong incentive to keep expenses at a reasonable level." *Martin v. Caterpillar Inc.*, 2010 WL 11614985, at *5 (C.D. Ill. Sept. 10, 2010). The same is true here. Class Counsels' expenses were necessary to litigate this action, are minimal in comparison to the $5,000,000.00 common fund and were incurred for the benefit of the Settlement Class. For these reasons, the Court should permit Class Counsel to recover $10,836.12 in costs and expenses from the Settlement Fund.

## III. The Plaintiffs Should Receive Reasonable Service Awards of $2,500 Each.

The named Plaintiffs have remained active and engaged in this Litigation as Class Representatives including, but certainly not limited to, reviewing and approving the terms of the Settlement Agreement. Counsel Decl., ¶ 23. Their collective efforts have been integral in establishing the $5,000,000.00 Settlement Fund. For these reasons, Plaintiffs request that they each be granted $2,500.00 service awards.

The Service Awards requested by Plaintiffs are in accord with those approved by federal courts in similar privacy class action matters involving tracking pixels. *See, e.g.*, *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 763 (E.D. Wis. 2024) (granting $3,500 service awards to class representatives & collecting cases); *In re Novant Health, Inc.*, 2024 WL 3028443, at *13 (M.D.N.C. June 17, 2024) (granting $2,500 service awards to class representatives). In fact, courts in this district have approved service awards much greater than $2,500. *See, e.g., BNVS Transp. LLC v. C&K Trucking, LLC*, 2023 WL 11983614, at *3 (N.D. Ill. Feb. 22, 2023) (granting $20,000 service award); *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 7018566, at *2 (N.D. Ill. Nov. 29, 2016) (granting $12,500 Service Award); *Furman v. At Home Stores LLC*, 2017 WL 1730995, at *2 (N.D. Ill. May 1, 2017) (granting $10,000 service award). Accordingly, Class Representatives' requests for $2,500.00 Service Awards each ($15,000 in total) are reasonable and justified given their efforts on behalf of their fellow Class Members.

## CONCLUSION

For these reasons, Plaintiffs and Class Counsel respectfully ask the Court to approve Plaintiffs' request for attorneys' fees equivalent to one-third of the Settlement Fund, reimbursement of $10,836.12 in litigation expenses, and Class Representative Service Awards in the amount of $2,500 to each Class Representative.[3]

**Dated:** February 25, 2025

/s/ Tyler Bean
Tyler Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
(212) 532-1091
tbean@sirillp.com

[3] A proposed order approving these requests and granting final approval of the Settlement will be included in the eventual Final Approval motion to be filed on or before April 15, 2025.

David DiSabato
**SIRI & GLIMSTAD LLP**
8 Campus Drive, Suite 105, PMB#161
Parsippany, New Jersey 07054
(212) 532-1091
ddisabato@sirillp.com

David S. Almeida
Matthew J. Langley
Britany A. Kabakov
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 437-6476
david@almeidalawgroup.com
matt@almeidalawgroup.com
britany@almeidalawgroup.com

***Counsel for Plaintiffs & the Settlement Class***