## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ASHLEY REEDY, JOSHUA COOK, MELODY SCHOON, JASMINE SMITH SHADARI BUSH and SEDENA MCCLAIN, *on behalf of themselves & all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> EVERLYWELL, INC. and BABY SOMEDAY, INC. D/B/A NATALIST, <br><br> Defendants. | Case No. 1:24-cv-02713 <br><br> Hon. Andrea R. Wood |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

DAVID S. ALMEIDA
MATTHEW J. LANGLEY
BRITANY A. KABAKOV
**ALMEIDA LAW GROUP LLC**
849 W. WEBSTER AVENUE
CHICAGO, ILLINOIS 60614
(708) 529-5418
DAVID@ALMEIDALAWGROUP.COM
MATT@ALMEIDALAWGROUP.COM
BRITANY@ALMEIDALAWGROUP.COM

MASON A. BARNEY
TYLER BEAN
**SIRI & GLIMSTAD LLP**
745 FIFTH AVENUE, SUITE 500
NEW YORK, NEW YORK 10151
(212) 532-1091
MBARNEY@SIRILLP.COM
TBEAN@SIRILLP.COM

DAVID DISABATO
**SIRI & GLIMSTAD LLP**
8 CAMPUS DRIVE, SUITE 105, PMB#161
PARSIPPANY, NEW JERSEY 07054
(212) 532-1091
DDISABATO@SIRILLP.COM

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION. ......................................................................................................... 1

II.   SETTLEMENT TERMS. .............................................................................................. 2

   A.  The Settlement Class...................................................................................................... 2

   B.  Class Member Benefits under the Settlement .................................................................. 3

III.   THE NOTICE PROGRAM. ......................................................................................... 4

IV.   LEGAL ARGUMENT ................................................................................................. 7

   A.  Final Class Certification for Settlement Purposes is Appropriate. ................................... 7

   B.  The Rule 23(a) Requirements Remain Satisfied................................................................ 8

   C.  The Rule 23(b)(3) Requirements Remain Satisfied......................................................... 10

     1.  Predominance......................................................................................................... 10

     2.  Superiority............................................................................................................... 10

   D.  The Settlement Agreement Warrants Final Approval. ..................................................... 11

V.   CONCLUSION .......................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ............................................................... 19

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................... 10, 11

*Carter v. Vivendi Ticketing US LLC*,
  2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ............................................................ 7

*Day v. Check Brokerage Corp.*,
  240 F.R.D. 414 (N.D. Ill. 2007) ............................................................................... 11

*Desue v. 20/20 Eye Care Network, Inc.*,
  2023 WL 4420348 (S.D. Fla. July 8, 2023) ............................................................... 7

*Fox v. Iowa Health Sys.*,
  2021 WL 826741 (W.D. Wis. March 4, 2021) ........................................................... 7

*Frasco v. Flo Health, Inc.*,
  2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ......................................................... 15

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2013 WL 1287054 (S.D. Ill. Mar. 28, 2013) ........................................................... 12

*Hinman v. M and M Rental Center*,
  545 F. Supp. 2d 802 (N.D. Ill. 2008) ........................................................................ 9

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................... 7

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ............................................................................... 15

*In re Forefront Data Breach Litig.*,
  2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) .......................................................... 7

*In re Mexico Money Transfer Litig.*,
  164 F.Supp.2d 1002 (N.D. Ill. 2000) ......................................................................... 6

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  2017 WL 2178306 (D. Minn. May 17, 2017) ............................................................ 7

*In re TikTok, Inc., Consumer Priv. Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) ....................................................................... 9

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ........................................................... 8, 10

*Karpilovsky v. All Web Leads, Inc.*,
2018 WL 3108884 (N.D. Ill. June 25, 2018) ...................................................... 8

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015) ........................................................................ 18

*Leung v. XPO Logistics, Inc.*,
326 F.R.D. 185 (N.D. Ill. 2018) ........................................................................ 17

*Oshana v. Coca-Cola Co.*,
472 F.3d 506 (7th Cir. 2006) .............................................................................. 8

*Redman v. Radioshack Corp.*,
768 F.3d 622 (7th Cir. 2014) ............................................................................ 17

*Savanna Grp., Inc. v. Trynex, Inc.*,
2013 WL 66181 (N.D. Ill. 2013) ........................................................................ 8

*Steele v. GE Money Bank*,
2011 WL 13266350 (N.D. Ill. May 17, 2011) .................................................. 13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ............................................................................ 14

*T.K. Through Leshore v. Bytedance Tech. Co.*,
2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .......................................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................................ 8

*Yvonne Mart Fox v. Iowa Health Sys.*,
2021 WL 826741 (W.D. Wis. Mar. 4, 2021) .................................................... 18

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ *passim*

**Other Authorities**

2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) .................................... 13

Manual for Complex Litigation (Fourth) § 13.12 (2004) .............................. 12

Further to Federal Rule of Civil Procedure Rule 23(e), Plaintiffs Ashley Reedy, Joshua Cook, Melody Schoon, Jasmine Smith, Shadari Bush and Sedena McClain (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, respectfully move this Honorable Court for final approval of the proposed settlement of this class action lawsuit. Defendants, through counsel, do not oppose this Motion.[1]

## I.    INTRODUCTION.

On December 20, 2024, this Court entered the preliminarily approval order for a proposed class action settlement between Plaintiffs and Defendants Everlywell, Inc. and Baby Someday, Inc. d/b/a Natalist ("Defendants" and together with Plaintiffs, the "Parties"). *See* ECF No. 30. Class Counsel's efforts created distinct monetary benefits for the approximately two-million Settlement Class Members in the form of a $5,000,000.00 non-reversionary common fund which will be used to pay, subject to Court approval, the following:

a. Pro Rata cash payments to all Settlement Class Members who submit a valid claim based upon their subclass identification (as defined herein);

b. The Settlement Administrator's Notice and Settlement Administration Costs;

c. Settlement Class Representative Service Awards;

d. Class Counsel's Attorneys' Fees and Expenses Award; and

e. The distribution of any uncashed funds that remain after the Pro Rata Payment Reminder Notice (to be considered Residual Funds) via *cy pres* distribution.

The Settlement involved a comprehensive notice program and user-friendly claims process which has been (and continues to be) implemented by the Settlement Administrator, Kroll Settlement Administration LLC ("Kroll"). *See* Declaration of Frank Ballard of Kroll Settlement

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Settlement Agreement and Release ("Settlement Agreement" or "SA"), which was filed as Exhibit 1 to the Joint Declaration of Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. *See* ECF No. 28-1.

Administration LLC In Connection With Final Approval of Settlement ("Kroll Decl.") (attached hereto as **Exhibit 1**). The Court-approved notice program provided direct notice by email or mail, the creation of a toll-free telephone number to answer Settlement Class Members' questions, and the creation of a Settlement Website. *Id.* ¶¶ 1, 5-10.

The reaction from Settlement Class Members has been positive and strongly supports final approval. 61,611 claim forms were received prior to the March 19, 2025 deadline to submit Settlement Claims—891 timely Claim Forms through the mail and 60,720 timely Claim Forms filed electronically through the Settlement Website. *Id.* ¶ 15. As explained below, the claims rate of approximately 3.18% is commensurate with the claims rate in other large data privacy settlements which were granted final approved. Moreover, the deadline to file objections or to request exclusion was March 19, 2025. *Id.* ¶ 20. No Settlement Class Members objected and only six have requested exclusion. *Id.* ¶ 21. Considering the valuable benefits conveyed to Settlement Class Members, and the significant risks they would face through continued litigation, the Settlement is fair, reasonable, and adequate and merits final approval.[2]

## II.     SETTLEMENT TERMS.

### A.     The Settlement Class

The Settlement and Preliminary Approval Order provide for a nationwide Settlement Class defined as "all individuals who purchased a product or service from www.everlywell.com or www.natalist.com anytime in the five years preceding the filing of the Complaint in the Litigation

---

[2] In the interest of judicial efficiency, for the factual and procedural background of the proposed Settlement, Plaintiffs respectfully refer the Court to, and hereby incorporate by reference, the case summary and procedural history in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support, filed on November 25, 2024 and Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards and Memorandum in Support. *See* ECF Nos. 28, 32.

and up through and including the date that the Court grants preliminary approval to Settlement Agreement." ECF No. 30, ¶ 1. The Settlement Class is divided into two subclasses. The first, titled the Sensitive Test Subclass, is defined as "the approximately 660,000 natural persons who used Defendants' Websites to purchase test kits and other products along the lines of the allegedly "sensitive" tests specifically alleged in the Complaint to have been purchased by the named plaintiffs in this litigation, such as, but not limited to, tests for sexually transmitted infections." *Id.* The second subclass, titled the Non-Sensitive Test Subclass, is defined as "approximately 1,340,000 natural persons who used Defendants' Websites to purchase test kits and other products not included within the "sensitive" tests described in Paragraph 12.nn [of the Settlement Agreement]." *Id.* [3]

> B.       **Class Member Benefits under the Settlement**

If finally approved, the benefits of the Settlement will be available to all Settlement Class Members through the $5,000,000.00 Settlement Fund to be funded by Defendants. SA ¶ 12.tt. The Settlement Fund will be divided into the Sensitive and Non-Sensitive Test Settlement Funds. The Sensitive Test Settlement fund will be funded in the amount of $2,640,000.00 and will be used to pay for (i) 52.8% of the Notice and Settlement Administration Costs incurred in the administration of the  Settlement Fund, (ii) 52.8% of any attorneys' fees and costs and expenses and Service Awards approved by the Court and (iii) pro rata payment to Sensitive Test Subclass Members who submit valid Claim Forms. *Id.* ¶ 12.mm. The Non-Sensitive Test Settlement Fund will be funded in the amount of $2,360,000.00, and will be used to pay for (i) 47.2% of the Notice and Settlement

---

[3] Excluded from the Settlement Class are the (i) the officers and directors of Defendants and their affiliates, parents, and subsidiaries; (ii) any judge, justice, or judicial officer presiding over the Litigation and the members of their immediate families and judicial staff; (iii) any individual who timely and validly excludes themselves from the Settlement, and (iv) the successors or assigns of any such excluded persons. *Id.*

Administration Costs incurred in the administration of the Settlement Fund, (ii) 47.2% of any attorneys' fees and costs and expenses and Service Awards approved by the Court and (iii) pro rata payment to Non-Sensitive Test Subclass Members who submit valid Claim Forms. *Id.* ¶ 12.s.

Any Residual Funds shall be distributed in *cy pres* to Privacy Rights Clearinghouse, a charitable organization jointly recommended by the Parties, to be approved by the Court (or any other charitable organization approved by the Court). SA ¶¶ 29, 42. Because the balance of the Settlement Fund will be "swept out" in direct pro rata cash payments to Settlement Class Members making valid claims, it is anticipated that any *cy pres* award will be nominal and will only consist of funds associated with uncashed checks or non-redeemed electronic payments.

## III.    THE NOTICE PROGRAM.

The Court appointed Kroll to disseminate class notice and to administer the Settlement. ECF No. 30, ¶ 6. In accordance with the Court's directive, Kroll employed direct notice that has been effective. On January 3, 2025, Kroll received one data file containing data for 624,767 Sensitive Test Subclass Members and 1,383,258 Non-Sensitive Test Subclass Members, which included names, email addresses and mailing addresses ("Class List"). Kroll Decl. ¶ 8. To prevent Claim Forms from being filed by individuals outside the Settlement Class and to curtail fraud, Settlement Class Members were provided a unique "Class Member ID" on their respective notices as part of the claims process. The Class Member ID is required for Settlement Class Members to file a Claim Form online. *Id.* ¶ 16.

Prior to sending Notice, Kroll undertook several steps to review the Class List for the emailing and mailing of Class Notices. *Id.* ¶ 8. Keeping the two subclasses separate, Kroll de-duped the data based on name, email, and address, which resulted in a total of 624,739 unique Sensitive Test Subclass Members and 1,315,327 Non-Sensitive Test Subclass Members, for a total

of 1,940,066 Settlement Class Members. *Id.* Additionally, in an effort to ensure that Postcard Notices would be deliverable to Settlement Class Members, Kroll ran the Class List through the USPS's National Change of Address ("NCOA") database and updated the Class List with address changes received from the NCOA. *Id.*

On January 20, 2025, Kroll caused the Email Notice to be sent to the 1,940,066 email addresses on file for Settlement Class Members. *Id.* ¶ 9. Of the 1,940,066 emails attempted for delivery, 236,100 emails were rejected/bounced back as undeliverable. *Id.* On February 10, 2025, pursuant to paragraph 48 of the Settlement Agreement, Kroll caused the mailing of 235,953 Postcard Notices via first-class mail to Settlement Class Members whose Email Notice bounced back and for whom Kroll had a viable mailing address. *Id.* ¶ 10.

After all remailings, Kroll estimates that direct notice reached 1,936,975 of the 1,940,069 Settlement Class Members to whom Class Notice was emailed or mailed, which equates to a reach rate of the direct Class Notice of approximately 99.84% of the Settlement Class Members. *Id.* ¶ 13. This reach rate is consistent with other court-approved, best-practicable notice programs and in excess of Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. *Id.* (citation omitted).

In addition to direct notice, on December 13, 2024, Kroll created a dedicated Settlement Website: www.ewlabtestsettlement.com. *Id.* ¶ 7. The Settlement Website "went live" on January 20, 2025 and contains a summary of the Settlement, important dates and deadlines, contact information for the Settlement Administrator, answers to frequently asked questions, downloadable copies of relevant documents, including the Amended Complaint, Settlement Agreement, Motion for Preliminary Approval, Preliminary Approval Order, Long-Form Notice,

Non-Sensitive Test Subclass Member Claim Form, and Sensitive Test Subclass Member Claim Form, and allowed Settlement Class Members an opportunity to file a Claim Form online. *Id.* As of April 10, 2025, the Settlement Website has had 131,696 unique users visit the website. *Id.*

On December 11, 2024, Kroll established a toll-free telephone number, (833) 627-2514, for Settlement Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system and/or through speaking with a live operator. *Id*. ¶ 5. As of April 10, 2025, the IVR system has received 1,568 calls, and 190 callers have been connected to live operators. *Id.* Additionally, on December 11, 2024, Kroll designated a post office box with the mailing address Settlement Administrator – Case #83136, c/o Kroll Settlement Administration LLC, PO Box 225391, New York, NY 10150-5391, in order to receive Requests for Exclusions, Claim Forms, and correspondence from Settlement Class Members. *Id.* The Notice Plan in this case was robust and satisfied all due process requirements.

The Settlement has been well-received by the Settlement Class. Settlement Class Members had until March 19, 2025, to submit a claim. *Id*. ¶ 14. As of April 10, 2025, Kroll has received 891 Claim Forms through the mail and 60,720 Claim Forms filed electronically through the Settlement Website. *Id*. ¶ 15. This equates to a claims rate of approximately 3.18%. *Id*. Kroll is still in the process of reviewing and validating Claim Forms. *Id.* As of the close of the period for objections and opt-outs, Kroll received six timely requests for exclusion and no objections. *Id*. ¶¶ 20-21. The lack of any objections and such a low exclusion rate strongly supports a finding that the Settlement is "fair and reasonable." *See, e.g.*, *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (granting final approval of settlement with 25 objections & finding the fact that "99.9% of class members have neither opted out nor filed objections to the proposed settlements … is strong circumstantial evidence in favor of the settlements.").

Finally, the claims rate in this case is in line with—if not exceeds—the claims rate of many other data privacy settlements approved by courts nationwide. *See, e.g.*, *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) ("A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions."); *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *2 (W.D. Wis. March 4, 2021) (claims rate of approximately 1%); *Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (claims rate of 1.56%); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding 1.8% claims rate reflects positive reaction by class); *In re Target Corp. Customer Data Sec. Breach Litig.*, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with roughly 0.23% claims rate); *Desue v. 20/20 Eye Care Network, Inc.*, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023) (approving claims rate of 0.66%). Plaintiffs submit that the highly successful notice program implemented pursuant to the Settlement meets the requirements of due process and Federal Rule of Civil Procedure 23 and should be finally approved.

## IV.     LEGAL ARGUMENT

### A.     <u>Final Class Certification for Settlement Purposes is Appropriate.</u>

On December 20, 2024, this Court provisionally found that the Settlement Class met the requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy—and the requirements of Rule 23(b)—predominance and superiority. ECF No. 30, ¶ 1. Since this Order, there have been no developments that would alter this preliminary finding. The Settlement Class should now be finally certified for settlement purposes.

**B.      The Rule 23(a) Requirements Remain Satisfied.**

*Numerosity.* Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 66181, at *4 (N.D. Ill. 2013); *see also Karpilovsky v. All Web Leads, Inc.*, 2018 WL 3108884, at *6 (N.D. Ill. June 25, 2018) (same). Here, there are approximately two-million Settlement Class Members. Joinder is therefore impracticable, and the Settlement Class satisfies the numerosity requirement.

*Commonality.* The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data privacy cases, "there are numerous common contentions capable of class wide resolution" *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 922 (N.D. Ill. 2022) (cleaned up). Indeed, common questions include whether and to what extent Defendants disclosed their personal data through the Tracking Tools on their Websites and whether Defendants violated common law and statutory law. All Settlement Class Members were also injured by the same course of conduct—the disclosure of their personal data via the use of Tracking Tools on Defendants' Websites. That inquiry does not vary from Class Member to Class Member and can be fairly resolved—for settlement purposes—all at once. Thus, the commonality requirement is met.

*Typicality*. Plaintiffs satisfy the typicality requirement under Rule 23 because their claims based on Defendants' alleged collection and disclosure of their personal data through the Tracking Tools on their Websites are coextensive with those of the absent class members. *See* Fed. R. Civ. P. 23(a)(3); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (upholding typicality finding). Plaintiffs allege that their personal information was compromised and that they

were impacted by the use of the same Tracking Tools that Defendants allegedly installed on their Websites that harmed the Settlement Class. *See Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008) (explaining that where defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met"). As such, typicality is met.

*Adequacy*. The adequacy requirement is satisfied where (i) there are no antagonistic interests between the named plaintiffs and their counsel and the absent class members; and (ii) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021). Here, Plaintiffs are members of the Settlement Class who allegedly experienced the same injuries and seek, like other Settlement Class Members, compensation for Defendants' alleged collection and disclosure of their personal data through the Tracking Tools on their Websites. Plaintiffs have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have, and continue to, vigorously prosecute this case on behalf of the Settlement Class. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for equivalent cash payments from the respective portion of the Settlement Fund, either the Sensitive Test or the Non-Sensitive Test Fund, to help remedy the alleged harms they have experienced as a result of Defendants' actions. *See* SA ¶¶ 12.s-t; mm-nn. Further, Class Counsel have decades of combined experience as class action litigators and are well suited to advocate on behalf of the Settlement Class. *See* ECF No. 28-1, ¶¶ 53-55. Accordingly, the adequacy requirement is satisfied.

**C.**     **The Rule 23(b)(3) Requirements Remain Satisfied.**

Plaintiffs also seek to certify the Settlement Class, for settlement purposes only, under Rule 23(b)(3) which has two components: (i) predominance and (ii) superiority. Fed. R. Civ. P. 23(b)(3). Pursuant to Rule 23(b)(3), the Court must find that common questions of law or fact predominate over individual questions and that a class action is a superior method for the fair and efficient resolution of the matter. *Id.*

        *1.*     *Predominance.*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). As discussed above, common questions predominate over any questions affecting only individual members. In this case, the key, predominant issues are whether Defendants were required to disclose to Settlement Class Members that they used Tracking Tools on Defendants' Websites and the alleged harm that arose when the personal information belonging to Settlement Class Members was allegedly shared, without their consent, with companies like Meta and Google. These questions can be resolved, for settlement purposes, using the same evidence for all Settlement Class Members, making class-wide settlement appropriate. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)") (cleaned up); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 926 (finding predominance in data privacy case).

        *2.*     *Superiority.*

Class-wide resolution is the superior method of addressing the alleged violations in this case. While the total economic harm caused by Defendants' alleged use of Tracking Tools on its

Websites is significant, each individual claim is small compared to the costs of litigating them separately. There are approximately two million Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See, e.g.*, *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 419 (N.D. Ill. 2007) ("Where, as here, a group of consumers typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure, class actions are superior to individual litigation."). Because the claims are being certified for purposes of settlement, there are no issues with manageability and resolution of thousands of claims in one action is superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Amchem*, 521 U.S. at 620. ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

In sum, the proposed Class's claims satisfy Rule 23(b)(3)'s requirements and should be certified. Adjudicating individual actions here is impracticable—the amount in dispute for each class member is small, the technical issues involved are too complex, and the required expenses costly. Thus, the Court should continue to certify the Class for settlement.

### D. <u>The Settlement Agreement Warrants Final Approval.</u>

A class action settlement may only be approved after a hearing and a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). To determine whether a settlement is fair, adequate, and reasonable the Court considers the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).These considerations overlap with the factors articulated by the Seventh Circuit prior to the amendment of Rule 23 in 2018 which include: (i) the strength of plaintiffs' case compared to the terms of the settlement; (ii) the complexity, length, and expense of continued litigation; (iii) the amount of opposition to the settlement; (iv) the presence of collusion in gaining a settlement; and (v) the stage of proceedings and amount of discovery completed. *See Hale v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 1287054, at *12–13 (S.D. Ill. Mar. 28, 2013) (citations omitted). Under these factors, approval of the Settlement is warranted.

### 1. *Fed. R. Civ. P. 23(e)(2)(A): Class Representatives & Class Counsel have Adequately Represented the Settlement Class Members.*

Class Counsel have ample experience litigating data privacy and pixel-tracking class actions and are well-versed in the legal claims and risks of this case. As explained in Class Counsels' Joint Declaration submitted with Plaintiffs' Unopposed Motion for Preliminary Approval, Class Counsel worked diligently to advance Plaintiffs' and Settlement Class Members' interests. *See* ECF No. 28-1. Prior to reaching the Settlement, Class Counsel investigated Defendants' Websites and their use of Tracking Tools, including parsing through Defendants' Websites' source code, researched and drafted an initial complaint, scheduled and participated in meet and confers with Defendants' Counsel, reviewed informal discovery, filed an amended complaint, and participated in a mediation. *Id.*; *see also T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022) (granting final approval where "[t]he parties engaged in substantial informal discovery and information sharing over a five-month period"); Manual for Complex Litigation (Fourth) § 13.12 (2004) (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting

early discovery at information needed for settlement negotiations); *id.* § 11.423 (courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery"). The procedural history of the case supports finding that Plaintiffs and the Settlement Class Members were adequately represented.

Plaintiffs are also adequate representatives of the Settlement Class. Plaintiffs' interests are coextensive with the interests of the Settlement Class. Here, as discussed *supra*, Plaintiffs' claims are aligned with the claims of the other Settlement Class Members. Accordingly, they have every incentive to vigorously pursue the claims of the Settlement Class as they have done to date by remaining actively involved in this Litigation since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the Settlement Agreement. This factor favors final approval.

### 2. Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank*, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), *report and recommendation adopted*, 2011 WL 13266498 (N.D. Ill. June 1, 2011). This presumption is applicable here because the Settlement resulted from good faith, arm's-length negotiations including a mediation with an experienced data privacy class action mediator, Bruce A. Friedman, Esq., and numerous telephone conferences between experienced counsel with a comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. This Settlement was reached only after informal discovery and meticulous investigation of the Defendants' alleged use of Tracking Tools on its Websites. This factor supports final approval of the Settlement.

### 3. *Fed. R. Civ. P. 23(e)(2)(C): the Settlement Provides Substantial Relief.*

Rule 23(e)(2)(c) requires examination of the relief provided by the Settlement. As explained further below, the benefits available to Class Members as a result of the Settlement are significant in comparison to the significant risk of obtaining no recovery or reduced recovery after protracted litigation. This Settlement ensures that Settlement Class Members will be compensated for the harms they have allegedly suffered as a result of the use of the Tracking Tools.

The Settlement Benefits here are comparable to results reached in other data privacy cases concerning the use of the Tracking Tools on Websites. *See, e.g.*, *Doe v. Partners Healthcare Sys*., Inc., Case No. 1984CV01651-BLS1 (Suffolk Super. Ct.) (final approval granted for non-reversionary common fund settlement of $18.4 million for a class of approximately 3 million patients); *John v. Froedtert Health, Inc.*, Case No. 2023CV001935 (Cir. Court Milwaukee County, Wisc.) (final approval granted for non-reversionary common fund settlement of $2 million for a class of approximately 459,000 patients); *In re Advocate Aurora Health Pixel Litigation*, Case No. 22CV01253 (E.D. Wisc.) (final approval granted for non-reversionary common fund settlement of $2.5 million for a class of approximately 12.25 million class members); *In re Novant Health, Inc*., Case No. 22CV00697 (M.D. N.C) (final approval granted for non-reversionary common fund settlement of $6.66 million for a class of approximately 1,362,165 million class members). As the relief provided through the Settlement is well within the range of possible approval when considered in light of the Rule 23(e)(2)(c)(i)-(iv) factors, final approval should be granted.

> a. <u>Fed. R. Civ. P. 23(e)(2)(C)(i): the Costs, Risk, and Delay of Trial and Appeal Favor Final Approval.</u>

The most important settlement-approval factor is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citations omitted). Nevertheless, "[b]ecause the

essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010).

The Settlement provides for substantial monetary relief. All Settlement Class Members are eligible to receive a pro rata share of the amounts remaining in the Settlement Fund after all costs and expenses are paid. From Kroll's review of the timely claims, 40,188 claims are from Non-Sensitive Test Subclass Members and 21,038 claims are from Sensitive Test Subclass Members. Kroll Decl. ¶ 19. Based on Kroll's calculations and the estimated net Settlement Fund of $3,024,616.54 and assuming no additional Claims are filed and no deficiencies cured, the estimated average settlement payment will be $35.52 for Non-Sensitive Test Subclass Members and $75.91 for Sensitive Test Subclass Members. *Id.* The value achieved through the Settlement is guaranteed, whereas the chances of prevailing on the merits are uncertain.

Although Plaintiffs believe in the merits of their claims, success is not guaranteed. Should litigation continue, Plaintiffs face significant risks. Data privacy and Tracking Tool cases are complex, with novel issues and evolving laws posing hurdles even at the pleading stage (such as motions to compel arbitration) and at class certification. *See, e.g.*, *Frasco v. Flo Health, Inc.*, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) (granting summary judgment in part in pixel tracking case). Further, if litigation were to continue, Defendants would continue to vigorously defend the case and the litigation could potentially span for years. Considering all of this, Plaintiffs' likelihood of success at trial is not certain. Considering these risks, the $5,000,000.00 non-reversionary Settlement Fund is a substantial recovery for the Settlement Class. The Settlement benefits are, therefore, fair, adequate, and reasonable compared to the range of possible recovery.

        b.      <u>Fed. R. Civ. P. 23(e)(2)(C)(ii): Method of Providing Relief is Effective.</u>

Under Rule 23(e), "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Notice program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members. To file a claim, Settlement Class Members needed only to complete a simple Claim Form to opt into a pro rata cash payment.

Settlement Class Members were able to submit claims online or through the mail. Kroll Decl. ¶¶ 3, 7, 15. The claims administrator, Kroll, is an experienced and nationally recognized class action administration firm. *Id*. ¶ 2. The Notice procedure used is claimant-friendly, efficient, cost-effective, and reasonable under the particular circumstances of this case. This is evident by the number of claims received by Kroll. As of April 10, 2025, Kroll received 61,611 claim forms from Settlement Class Members, which equates to a claims rate of 3.18% percent. *Id*. ¶ 15. This compares favorably with claims rates observed in other data privacy and pixel-tracking class action settlements. *See* § III, *supra* (compiling cases). Accordingly, the methods of distributing relief to Settlement Class Members further support that the Settlement is fair, reasonable, and adequate.

        c.      <u>Fed. R. Civ. P. 23(e)(2)(C)(iii): Proposed Award of Attorneys' Fees is Fair and Reasonable.</u>

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorneys' fees, including timing of payment." Here, the Settlement Fund is funded in the amount of $5,000,000.00 which, in addition to paying benefits to Settlement Class Members, will also be used to pay approximately $282,881.34 in Notice and Settlement Administration Costs (Kroll Decl. ¶ 22), $10,836.12 in litigation costs incurred by Class Counsel, and $12,500.00 in Service Awards to the Settlement Class Representatives, if approved by the Court.

16

Plaintiffs request attorney's fees in the amount of $1,564,594.18—equivalent to one-third of the Settlement Fund after deducting Notice and Settlement Administration Costs, litigation costs, and the proposed Service Awards—as well as reimbursement of $10,836.12 in litigation costs incurred by Class Counsel.[4] *See* ECF No. 35 (Supplement to Motion for Attorneys' Fees requesting reduced amount). This fee and expense request falls in line with other awards in data privacy cases as discussed in Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards. *See* ECF No. 32.

> d.      Fed. R. Civ. P. 23(e)(2)(C)(iv): No Additional Agreements.

As no additional agreements requiring identification exist, this factor does not weigh in favor of or against final approval.

### 4. *Fed. R. Civ. P. 23(e)(2)(D): the Settlement Agreement Treats Settlement Class Members Equitably.*

Finally, Rule 23(e) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The proposed Settlement treats all Settlement Class Members fairly. The Settlement Class is divided into two subclasses: (1) the Sensitive Test Subclass, consisting of individuals who purchased sensitive tests from Defendants, such as tests

---

[4] In Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards, Plaintiffs requested attorney's fees in the amount of $1,666,666.00, equivalent to one-third of the Settlement Fund. *See* ECF No. 32. This request did not conform with the relevant ratio considered by Seventh Circuit courts in evaluating requests for attorney's fees, which "is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. Radioshack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014); *see also Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 200 (N.D. Ill. 2018) (explaining "courts in this district have generally used the net value of a settlement as a reference for awarding fees, not counting administrative costs and incentive awards"). Thus, on April 14, 2025, Plaintiffs filed a Supplement to their Motion and Memorandum of Law in Support of Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards. *See* ECF No. 35. Plaintiffs, in the instant motion are requesting one-third of the **net** Settlement Fund, *i.e.*, the Settlement Fund after deduction of Notice and Settlement Administration Costs, litigation costs, and service awards requested for the five Settlement Class Representatives.

for sexually transmitted diseases, and (2) the Non-Sensitive Test Subclass, consisting of those who purchased products other than sensitive tests from Defendants. SA ¶¶ 12.t, 12.nn.

Sensitive Test Subclass Members who submit a Valid Claim Form will receive a pro rata share of the Sensitive Test Settlement Fund, consisting of $2,640,000.00 (52.8% of the total Settlement Fund) after deduction of 52.8% of the Notice and Settlement Administration Costs, attorneys' fees and costs awarded by the Court to Class Counsel, and Service Awards awarded by the Court. *Id.* ¶ 12.mm. Non-Sensitive Test Subclass Members who submit a Valid Claim Form will receive a pro rata share of the Non-Sensitive Test Settlement Fund, consisting of $2,360,000.00 (47.2% of the total Settlement Fund) after deduction of 47.2% of Notice and Settlement Administration Costs, attorneys' fees and costs awarded by the Court to Class Counsel, and Service Awards awarded by the Court. *Id.* ¶ 12.s. Accordingly, the Settlement treats Settlement Class Members equitably because it entitles Settlement Class Members to the same monetary payment as every other member of their Subclass, and accounts for the different magnitude of privacy violation between Sensitive Test and Non-Sensitive Test Subclass Members. *See, e.g.*, *Yvonne Mart Fox v. Iowa Health Sys.*, 2021 WL 826741, at *6 (W.D. Wis. Mar. 4, 2021) (finding that settlement was equitable because "to the extent Settlement Class members receive different compensation under the Settlement, it will reflect their different losses and be proportionate to their actual harm").

Plaintiffs Ashley Reedy, Joshua Cook, Melody Schoon, Jasmine Smith, Shadari Bush and Sedena McClain seek a Service Award of $2,500.00. These requested awards are well within the range that Courts within the Seventh Circuit routinely approve. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (finding "a $5,000 reward is justified based on Kolinek's role working with class counsel, approving the settlement agreement and fee application, and

volunteering to play an active role if the parties continued litigating through trial"); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., 2012 WL 651727, at * 16 (N.D. Ill. Feb. 28, 2012) (approving $25,000 service awards).

## V.     CONCLUSION

Because the proposed Settlement is fair, reasonable, and adequate, Plaintiffs respectfully request that the Court grant final approval of class action settlement and enter the proposed Order.

Date: April 15, 2025                    Respectfully submitted,

*/s/ David S. Almeida*
David S. Almeida
Matthew J. Langley
Britany A. Kabakov
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com
matt@almeidalawgroup.com
britany@almeidalawgroup.com

David DiSabato
**SIRI & GLIMSTAD LLP**
8 Campus Drive, Suite 105
PMB#161
Parsippany, New Jersey 07054
 (212) 532-1091
ddisabato@sirillp.com

Mason A. Barney
Tyler Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
(212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com

***Counsel for Plaintiffs & the Settlement Class***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on Tuesday, April 15, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ David S. Almeida*
David S. Almeida
